THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. THE
    BINGHAMTON TRUST COMPANY, Respondent.

In an action to recover the penalty prescribed for carrying on business in
    violation of the provision of the Banking Act of 1882 (§ 283, chap. 409,
    Laws of 1882), which makes it unlawful for any corporation, association
    or individual " to advertise or put forth a sign as a savings bank, or in
    any way to solicit or receive deposits as a savings bank," these facts
    were agreed upon :  Defendant, a trust company organized under the
    act of 1887 (Chap. 546, Laws of 1887), on receipt of deposits, issued to
    customers pass books, each containing sundry so-called "rules govern-
    ing deposits," which, it was claimed, were precisely similar to those issued
    by savings banks.   Defendant also issued and distributed a circular and
    published in newspapers an advertisement.   Said rules stated the hours
    for business ; that entries of deposits and withdrawals of moneys are
    made through a pass book ; that to draw out money there must be a
    written order or check, and that the right to withdraw is, at the
    option of the company, subject to a condition requiring notice to
    be given as specified.   The rates of interest to be paid on deposits were
    stated.   The company reserved the right to close and refuse accounts.
    Provision was made for deposits by minors, and in case of loss of a pass
    book, and it was finally stated that the acceptance of the pass book
    should be evidence of an agreement between the company and the
    depositor.   The circular and advertisement stated the organization of
    defendant as a trust company and set forth the superiority of such
    companies and the advantages they offer to customers; also stated the
    amount of defendant's paid-up capital, and the security it offered to
    depositors, adding that it "differs from a savings bank in that it has a
    large capital invested that is pledged as security to its depositors."
    Held, that the rules were not such as are or should be confined in their
    use to a savings bank business, but were those which, in view of the
    powers given defendant by the act under which it is organized, to
    receive deposits and make contracts, it was proper for it to make ; that
    it was not unlawful for it to transact its business upon the general plan
    or in the manner usually adopted by savings banks ; that the Banking
    Act simply required that defendant in soliciting and receiving deposits
    should not hold itself out as a savings bank so as to deceive the public,
    and, therefore, that the facts did not establish a violation of the act.

(Argued June 21, 1893; decided October 3, 1893.)

APPEAL from judgment of the General Term of the
Supreme Court in the fourth judicial department, entered

upon an order made November 22, 1892, which directed judgment in favor of defendant upon a case submitted under the Code of Civil Procedure (§ 1279).

The facts agreed upon, so far as material, are stated in the opinion.

*S. W. Rosendale, Attorney-General,* for appellants. The defendant was organized under the provisions of chapter 546, Laws of 1887, entitled "An act to provide for the organization of trust companies, for their supervision, and for the administration of their affairs," and is not authorized to transact the business referred to. (*Pratt v. Short,* 79 N. Y. 437; *N. Y., L. & T. Co. v. Helmer,* 77 id. 64; *Huntington v. Savings Bank,* 96 U. S. 388; Laws of 1887, chap. 546, § 1; *R. S. Bank v. Kray,* 102 N. Y. 331; *N. Bank v. Jones,* 95 id. 115; *Hun v. Carey,* 82 id. 65; *U. S. T. Co. v. Brady,* 20 Barb. 119; *M. Bank v. New York,* 121 U. S. 138; *Leavitt v. Blatchford,* 17 N. Y. 521; *People v. U. Ins. Co.,* 15 Johns. 358; *Ohio v. G. A. Society,* 11 Ohio St. 1; *State v. W. S. L. Co.,* Id. 96.) The defendant has violated section 283 of the Banking Law. (Laws of 1882, chap. 409, § 283; *M. N. Bank v. Hall,* 83 N. Y. 338; Const. N. Y. art. 8, § 4; Laws of 1890, chap. 563, § 2.)

*W. J. Welsh* for respondent. The Binghamton Trust Company under no circumstances and in no place advertises itself as a bank, much less as a savings bank; it everywhere denominates itself as a trust company, and in its circulars sets forth particularly the manner in which it differs from a savings bank, and has not violated section 283 of the Banking Act. (*Curtis v. Leavitt,* 15 N. Y. 1; *People v. Doty,* 80 id. 325; *Perkins v. Smith,* 116 id. 441.) Defendant does not exercise a privilege and franchise not conferred upon it by law. (Code Civ. Pro. § 1281; *C. S. Co. v. Voorhis,* 104 N. Y. 525; *Pratt v. Short,* 79 id. 445; *Curtis v. Leavitt,* 15 id. 66; Laws of 1890, chap. 563; Laws of 1887, chap. 546, § 21; *Chapman v. White,* 6 N. Y. 412.)

GRAY, J.   In this action the People of the state, by their attorney-general, seek to recover a judgment in their favor, which shall decree that the defendant is exercising franchises not conferred upon it by law, and which shall adjudge in their favor and against the defendant for the amount of the penalty prescribed for carrying on business in violation of section 283 of chapter 409 of the Laws of 1882, known as the Banking Law.

By that section it is made unlawful for any corporation, association, or person "to advertise or put forth a sign as a savings bank, or in any way to solicit or receive deposits as a savings bank;" and, for every offense against these provisions, the offender "shall forfeit and pay......the sum of $100 ......to be sued for and recovered in the name of the People of the state, by the district attorneys of the several counties, for the use of the poor, chargeable to said county in which said offense shall be committed."

The district attorney did not bring this action, but he has joined in its submission.   Inasmuch as no objection has been raised to the form of the action, and in view of the public interest in a determination of the issue raised, we shall pass over any question of that kind, and we shall assume that a recovery might be had in such an action, if, upon the facts established, a violation as alleged is made out.

The facts were agreed to by the parties.   It appears that the defendant was a trust company organized under chapter 546, Laws of 1887.   Its mode of doing business is to issue a pass book to customers, upon the receipt of deposits, containing sundry so-called "rules governing deposits;" that it issued and distributed a circular descriptive of the nature of the corporate business and pointing out the advantages to the public in dealing with the company; and that it also published in the papers a certain advertisement descriptive of its business.   With respect to the pass books issued by this defendant, it was argued that, as they were exactly similar to those issued by savings banks, in the feature of a set of interest rules, a violation of the Banking Law is evidenced.   Whether it is true that the pass books are

alike in the feature alleged, we cannot say; inasmuch as the fact is neither admitted, nor shown by the record. But, assuming that such likeness exists, are we then to say that there has been a violation of the law?

If those rules are such as savings banks have adopted, in their relations and dealings with depositors, I see nothing in them but a regulation of the manner of doing business; which has nothing in its nature to make it so peculiarly appropriate to the savings bank business, as, in the view of the law, or of the ordinary mind, to constitute any test of the organic business; or that the rules are other than would be appropriate for adoption for the regulation of any business in which deposits of money are received and held upon an obligation to pay interest. I do not see that the rules, which are given in the circular as governing the "Interest Department," and which are printed in the pass book, are such as should be confined in their use to a savings bank business. They are eight in number. The first states the hours for business; the second, that entries of deposits and withdrawals of moneys are made through a pass book; the third, that to draw out moneys there must be a written order, or check, and that the right to withdraw is subject to a condition, to be imposed at the option of the company, requiring a certain notice to be given, varying with the amount proposed to be drawn; the fourth fixes the rate of interest which will be paid on deposits left for three months, and states how it will be compounded and computed; the fifth reserves a right to the company to close and refuse accounts; the sixth states that moneys may be deposited for minors under written directions; the seventh provides for the case of a loss of the pass book, and the eighth states that the acceptance of the pass book, with its entries, shall be the evidence of an agreement, by company and depositors, to be governed by these rules. The trust company has the power, under the fourth section of the act under which it exists, "to receive deposits of trust moneys, securities and other personal property from any person or corporation, and to loan money on real or personal

securities." With this rather broad privilege, and having the power, by its first section, " to make contracts," there can be no question as to its right to agree with its depositors with respect to their relative duties and obligations. That agreement is embodied in the eight rules, and in no one can we find any such innovation upon commercial practices, or such a novelty in idea, as to characterize it as especially applicable to any peculiar institution. These rules are, evidently enough, the product of a consideration of the nature of the obligation which the trust company assumes towards the depositor, and of certain prudential requirements, which have been suggested by a business sense and by the experience of men, founded upon commercial transactions and crises. The company's power, by the eleventh section of the act, over the deposits extends to a use of them in making loans and in a pretty wide range of investments. Its relations with a depositor are, obviously, those of debtor and creditor. The moneys belong to the company when deposited, and through their use, in the permitted ways, are gained the moneys from which to make the interest payments agreed to. Without being a banking corporation, as such is legally understood, it is a moneyed corporation and possesses many of the powers of a banking corporation; as may be inferred from the eleventh section, in prohibiting a construction which would authorize the issuance of bills to circulate as money. These circumstances sufficiently show that, in the formulation of rules to govern deposits, the company but compels the adoption of a reasonable and prudential agreement as the basis of its relations with a depositor. The statute has not prescribed a set of rules, or of regulations, for doing business with depositors, for the adoption by the one or the other class of corporations; nor has it done anything more than to define and limit their powers, duties and privileges. I know of no principle of law which, as to commercial transactions within their chartered powers and involving the receipt or borrowing of, and the obligation to repay, moneys, denies the entire freedom to regulate them by such a contract as the parties are willing to enter into.

The learned attorney-general, conceding that trust companies may receive deposits of moneys and may pay interest upon them, argues that they may not transact or regulate their business upon the general plan, or in the manner usually adopted by savings banks. Why may they not? Can there be such a thing as an exclusive appropriation of a system of conducting commercial transactions, and thereby to symbolize it to the world? I do not think that savings banks, however closely in the public interest they should be guarded, should be accorded a monopoly of any set of business rules. The vice of the position, taken for the People in this controversy, seems to be found in attaching a wrong sense to the language of the section. The prohibition is that a corporation shall not " solicit or receive deposits as a savings bank." It would not be correct to interpret that language as though its literal reading were " to solicit or receive deposits as a savings bank solicits or receives deposits." That would, in my opinion, impute to the legislature an unnecessary intention. I think it plain that it embodies the legislative intention that a corporation shall not, in soliciting and receiving deposits, represent, or hold out itself as a savings bank so as to deceive the public. Unless it can be established that, in the acts of issuing the circular and of publishing the advertisement in question, there is either a soliciting of deposits from the public in the character, or under the pretense of being a savings bank, or an advertising of the corporate business in such manner as to deceive persons into believing it to be that of a savings bank, we could not say that any violation of the law has been made out. It ought to be plain to the ordinary mind, in reading the circular, that the features described to the public as being valuable and attractive mark the company at once as being other than a savings bank, and as possessing several attributes and capacities very different from those of banks for savings. It sets out by announcing to the public its corporate title, and its readiness to receive deposits of money, and to transact such other business as its charter permits. It describes the advantages which trust companies offer by reason of having a capital, and being

subjected to certain legal restrictions, and their greater safety as depositaries which people may trust with their savings. It sets forth the amount of its paid-in capital; mentions the liability and solvency of its stockholders, as an added security to the depositor; describes its investments; narrates the powers conferred by the charter, and, under the heading of "An Interest Department," gives a set of rules, which are the same as printed in the pass book, and which have been described. It explicitly says that it "differs from a savings bank in that it has a large capital invested, that is pledged as security to its depositors." The whole circular is the company's prospectus, setting forth the advantages and superiority of trust companies in general, as depositaries of the people's moneys, and of this company in particular; not because of any special legal attributes, but because possessing, in connection with its organization and management, certain solid and attractive features. There is nothing in the paper which should lead minds of the plain order to suppose that the corporate business was that of a savings bank; and the only feature of corporate resemblance is in the soliciting of deposits and the manner in which they would be received and held. That, however, is not a business distinctively and exclusively of a savings bank. Nor is the published advertisement of the defendant subject to any other legal criticism than is the circular. The advertisement is not that the defendant could, or would, do business as a savings bank; and, no more than the circular, does it hold the company out as a savings bank.

In discussing whether acts were in violation of law, I have, of course, had in mind the statutory prohibition, or provision, in the section of the Banking Law referred to. I have not had reference to the statute under which the defendant is incorporated. We are not concerned with the question of whether it has violated any provision of its charter. That question is not here. If there has been any such violation, or an exercise of powers, or privileges, not conferred by law, that question can only be raised and tried out in another form of action provided to be brought by the attorney-general. That with which

we are alone concerned is whether the inhibition in the Banking Law is met by the facts of this case, so as to render the defendant amenable to the penalty prescribed for a violation. I think it clearly is not. The provision is only aimed at preventing a deception from being practiced upon the public by sign or representation. It is intended to act as a safeguard to what, under the legislation in the state, exists with respect to corporations which are created to become safe depositaries of the people's moneys, and which are designed solely for the public advantage, and not for the promotion of any private interests of the organizers or members.

If we were called upon to discuss the relative advantages of the two classes of institutions, in the feature of security offered to the depositor, it might be said that the trust company is the safer in the added resource of a capital stock. Each is placed under a supervision by the state government, and the difference in the powers, or in the restrictions imposed upon the use or investment of moneys, rests upon the difference in the purposes for which incorporated. The trust company is incorporated for the purpose of gain to the members of the corporation; while the savings bank is in the nature of a charitable institution, the sole corporate purpose of which is to securely protect moneys deposited up to a certain fixed amount by individuals and, by investing them in such limited and prudent ways as the legislature has prescribed, to secure a safe and moderate return by way of interest upon the moneys held. Whatever tends to the protection of a bank for savings is in the public interest, and it is in the line of that protection that any appearance, or external sign, or representations should be prohibited, which would deceive and cause the public to suppose that a business institution, really organized for the gain of its members, was a savings bank. But the line ends with securing that general protection against public deception, and does not project itself into the mere methods by which transactions with depositors or dealers are conducted. There can be no exclusive appropriation of business laws, or business methods. Where commercial transactions are alike in their

character, the parties to them are entitled to make use of the same business rules, and to contract in the same manner respecting them.

I think, for these reasons, that the judgment of the General Term was right, and should be affirmed by us, with costs.

All concur, except MAYNARD, J., not voting.

Judgment affirmed.