[Civ. No. 4548. First Appellate District, Division Two.—August 31, 1923.]

ANTONIO F. SILVEIRA et al., Respondents, v. ASSO-CIATED MILK PRODUCERS (a Corporation), Appellant.

[1] CONTRACTS—SALE OF MILK TO MARKETING ASSOCIATION—RECOVERY OF BALANCE DUE—BY-LAWS OF ASSOCIATION—EXCLUSION FROM EVIDENCE.—In an action by milk producers to recover a balance due for milk sold to a milk marketing association, with which they had contracted in writing to furnish milk, the by-laws of the association were properly excluded from evidence where there was nothing therein at variance with the contract of the parties as written.

[2] ID.—EVIDENCE—KIND OF BUSINESS TRANSACTED BY ASSOCIATION —CONTRACTS OF REMAINING STOCKHOLDERS. — In such an action, evidence offered by the association that each remaining stockholder held a similar contract to that held by plaintiffs was not material for the purpose of showing the kind of business the asso-

ciation was transacting, and therefore to show the kind of a corporation it was.

[3] Id.—Nature of Corporation—How Determined.—The nature of a corporation depends upon the provisions of its charter and not upon what in fact the corporation is actually engaged in doing.

[4] Id.—Expenditures by Association—Liability of Producer—Construction.—In such an action, expenditures by the association in building a milk plant and in purchasing an interest in a dairy company in order to market milk cannot be charged to the plaintiffs under a clause in the contract which provides, "This agreement is contingent on . . . causes . . . beyond the control of the parties, or either thereof."

[5] Id.—Withholding of Moneys from Producer—Right of Association—Construction.—A provision in a contract between a milk producer and a milk association by which the former agrees to furnish to the latter stated quantities of milk, for which the association is to pay the producer a certain price, less freight charges from the point of shipment to a designated point, and the association's charges for marketing said milk, which marketing charge is not to exceed a stated sum, does not authorize the association to withhold, out of moneys payable to the producer for milk furnished, expenditures by it in building a milk plant and in purchasing an interest in a dairy company.

APPEAL from a judgment of the Superior Court of Marin County. Edward I. Butler, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jordan & Brann and F. I. Lemos for Appellant.

George H. Harlan for Respondents.

STURTEVANT, J.—The plaintiffs sued for, and by the trial court were awarded, a judgment for a balance alleged to be owing to them on the sale of milk. The defendant being dissatisfied with the judgment has appealed, bringing up a bill of exceptions. The dealings between the parties were had under a written contract, a copy of which is as follows:

"Agreement made this 20th day of March, 1919, by and between the Associated Milk Producers, a California corporation, with its principal place of business at No. 53 Clay Street, San Francisco, California, hereinafter called the

'The Association,' and A. F. Silveira & Co., hereinafter called 'the producer.'

"Witnesseth:

"That the producer hereby agrees to market all the milk produced by him, beginning June 1st, 1919, and ending September 20th, 1921, exclusively through the association; he agrees to produce and deliver twice daily to the association at San Francisco, California, or to such other place as the association shall direct, in all not less than 2666 hundred pounds of market milk, and not more than 2924 hundred pounds of market milk, for which on the 20th day of each month he is to be paid for all milk shipped on the preceding month, less freight charges from the point of shipment thereof to San Francisco aforesaid, and the association's charges for marketing said milk, which marketing charge shall in no case exceed fifteen cents per hundred pounds.

"The board of directors of said association is hereby given full power to fix the price of said milk from time to time, and the association hereby agrees to market all of said milk at the prices so fixed by its said board of directors.

"For all milk furnished in excess of the maximum amount above set forth producer shall receive monthly, as above specified, the prevailing butter fat price received therefor by the association less freight charges and less whatever expenses may be incident to the handling, manufacture and sale thereof by the association.

"Should the producer fail at any time to twice daily deliver to the association the minimum amount of market milk hereinbefore specified, he hereby authorizes the association, as his agent, at its option, to go into the open market and buy whatever milk shall be deemed necessary to make up his shortage to the minimum amount hereinbefore specified, and to charge the extra cost thereof to him, and he hereby promises to pay the same on demand.

"All milk delivered under this contract must be produced by the producer at San Rafael, Calif., be properly cooled, pure, sweet, marketable, and conform to the laws of the State of California, and to the ordinances of the City and County of San Francisco, State of California, or any other municipality where the association does business, governing the same, and shall not contain less than 3.4 per cent butter fat, and not less than 11.0 per cent of total solids,

including butter fat. It shall be optional with the association to either accept or reject milk not conforming to the foregoing standards.

"The association agrees to cause to be furnished all tanks necessary for the shipment of milk, which shall be of such size, form, material and condition as to comply with all requirements of state, county, city and county, city and local laws, regulations and ordinances governing the same, but a failure to furnish such tanks shall not be construed as a breach of this contract, and upon such failure the producer shall furnish such tanks as may be needed for his several shipments and the expense shall be paid by the association.

"This agreement is contingent on acts of God, strikes, delays of carriers and other causes or delays beyond the control of the parties, or either thereof.

"The producer cannot assign this contract without the written consent of the association.

"This agreement shall inure to the benefit of the heirs, executors, administrators, successors or assigns of the parties hereto.

"In witness whereof, the association has hereunto caused these presents to be executed and its corporate seal to be thereunto attached by its president and secretary thereunto duly authorized the day and year first above written, and the producer has likewise executed this contract."

Neither in the trial court nor in this court was it claimed that the defendant was not allowed "freight charges from the point of shipment thereof to San Francisco," nor that it was not allowed fifteen cents per hundred pounds for marketing.

Nevertheless the appellant claims that as to it the judgment was incorrect and that the error therein arose by reason of the refusal of the trial court to receive in evidence certain testimony which the appellant offered. In this behalf it may be stated that during the trial the appellant offered in evidence its by-laws; it offered to show that appellant had 153 stockholders, and that it had a similar marketing agreement with each one of them, and that in short the appellant was "a co-operative, non-profit, milk-marketing California corporation," and that during the term of the contract it became necessary for the defendant "to build a milk plant at Holt, California, at a cost

of $125,000, and that it became necessary to buy an interest in the San Francisco Dairy Company at a cost of $150,000 in order to market'' some of the milk so purchased from its stockholders, and that some milk was sold on a basis solely of its butter fat content. From other sources there was already some evidence in the record that the defendant was a corporation, that it had a capital stock, that the stock was sold to dairymen only, and then only to dairymen who in turn executed a contract similar to the contract hereinabove set forth. Article III of the by-laws deals with the subject of the forms of marketing contracts which the defendant may execute. Section 6 of that article provides for the making of the form of contract hereinabove set forth. Our attention has not been called to any other passage having any pertinency to this case. **[1]** As there is nothing in the by-law that is at variance with the contract as written, the objection was properly sustained. **[2]** The defendant also offered to show that each remaining stockholder held a similar contract. This offer was apparently for the purpose of showing the kind of business the defendant was transacting, and therefore to show the kind of a corporation the defendant was. The evidence was not material for the purpose for which it was offered. **[3]** The nature of a corporation depends upon the provisions of its charter and not upon what in fact the corporation is actually engaged in doing. (*People* v. *Binghamton,* 139 N. Y. 185 [34 N. E. 898]; *Mitchell* v. *Beckman,* 64 Cal. 117, 122 [28 Pac. 110]; *City of Los Angeles* v. *Loan etc. Co.,* 109 Cal. 396, 402, 403 [42 Pac. 149].) **[4]** The appellant further claims that its expenditures in building at Holt and in purchasing an interest in the San Francisco Dairy Company were authorized by the clause of the contract which provides: ''This agreement is contingent on . . . causes . . . beyond the control of the parties, or either thereof.'' **[5]** In this contention we think it is in error. The clause does not cover such a claim. The claim of the appellant, if good, must find its support in the language of one of the first paragraphs which is directly addressed to the moneys the defendant may withhold. Those moneys are expressed in the contract as follows, ''less freight charges from the point of shipment thereof to San Francisco aforesaid and the Association's charges for marketing said milk, which market-

ing charge shall in no case exceed fifteen cents per hundred pounds.'' That language is clear and unambiguous. It is a cardinal rule of interpretation that a writing free of ambiguity and uncertainty needs no interpretation. The defendant has already received fifteen cents per hundred pounds for marketing the plaintiff's milk. To allow the defendant further moneys on this claim, under the guise of interpretation is to do violence to the express language used by the parties in framing their contract.

The paper fully quoted above is the marketing agreement between the parties. Whether with the utmost care and precision and conformance to the provisions of the statutes, state and federal, the defendant was organized as a non-profit, co-operative, marketing corporation, nevertheless, as between it and its members there is in the nature of things a marketing contract. In this particular case that contract was reduced to writing. On its face it purports to enumerate the moneys which the defendant might deduct from the sale price of the milk. It does not even purport to provide a fund for purchasing lots and buildings, nor for the purpose of purchasing agencies for distribution except as such distribution cost may be covered by the fifteen-cent charge, nor does the contract purport to cover the contingency of an excessive supply of milk excepting as that matter may be covered by the same provision in the contract. These elements may not be added by interpretation. That is a misnomer. Instead of interpretation such an attempt would 'be to vary the terms of a written instrument as the trial court properly held.

The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 29, 1923.

All the Justices concurred.