UNITED STATES PIPE AND FOUNDRY COMPANY, Plaintiff, *v.* CITY OF HORNELL, Defendant.

Supreme Court, Steuben County, March 15, 1933.

*James McCall*, for the plaintiff.

*Stanley & Gidley*, for the defendant.

KNAPP, J.   The defendant City of Hornell is a municipal corporation, and during the year 1932 purchased from the plaintiff certain cast iron pipe to the amount and value of $932.   On the 4th day of February, 1932, the defendant drew its warrant payable to the order of this plaintiff for the sum of $932, payable at First National Bank of Hornell, and forwarded the same to the plaintiff at its Buffalo office.

The Buffalo office of the plaintiff, not having authority to either indorse or collect this warrant, transmitted the same on the fifth day of February by mail to the main office of the plaintiff at Burlington, N. J.   It arrived at its destination in the usual course of mail after twelve o'clock on Saturday, February sixth.   Saturday afternoon being a half holiday the same was not delivered to the office of the plaintiff until Monday morning, February eighth.   On that day this warrant was indorsed by the plaintiff, payable to the order of the Mellon National Bank of Pittsburg, Penn., and was forwarded by the plaintiff by mail to this bank for collection. This warrant arrived in Pittsburg February 10, 1932, and on that day the Mellon National Bank indorsed the warrant and forwarded it through the Pittsburg Clearing House to the Federal Reserve Bank in New York, where it was received on the 11th day of February, 1932, and on that day the Federal Reserve Bank indorsed it and forwarded it with other items to the First National Bank of Hornell, the bank where it was payable, for payment.   It was received by this payor bank on the 12th day of February, 1932, but that being a legal holiday the bank was closed for business and did not open until February thirteenth, which was a Saturday. On that day the payor bank received this warrant, and in the ordinary course of business drew a draft in favor of the Federal Reserve Bank of New York upon its correspondent in the city of New York, the Chase National Bank, for the amount of this warrant, which draft, together with other checks or items received with it, were transmitted by mail by the Hornell bank on Saturday, February thirteenth, to the Federal Reserve Bank at New York.   After so transmitting this draft to the Federal Reserve Bank in New York some clerk in the office of the First National Bank of Hornell entered upon the ledger sheet kept by said bank the sum of $932 as a charge against the general account of this defendant.

The draft drawn by the First National Bank of Hornell to the order of the Federal Reserve Bank of New York was received

in the city of New York on February 15, 1932, the next business day after its issuance, and on that day was presented for payment to the Chase National Bank upon which it was drawn and payment was refused. The same was protested and was returned by the Federal Reserve Bank to the First National Bank of Hornell with notice of its protest, and on the same day the Federal Reserve Bank notified the Mellon National Bank of Pittsburg, from whom it had received this collection, of the non-payment of the instrument, and the latter bank on the same day notified this plaintiff. Thereafter and on the 17th day of February, 1932, the plaintiff advised its correspondent, the Mellon National Bank of Pittsburg, by mail to charge the item in question against its account, to notify its correspondent to have the same protested and to treat the same as dishonored under section 350-j of the Negotiable Instruments Law of this State. Such notice was transmitted in the usual and ordinary course of mail to the Federal Reserve Bank of New York and from there to the First National Bank of Hornell, and on the 24th day of February, 1932, the national bank examiner in charge of the First National Bank of Hornell indorsed upon this warrant the following statement:

" First National Bank of Hornell, N. Y., suspended. I certify that the Books and Records of the Bank evidence that this item was charged to the drawer's account prior to suspension.

" THOS. J. O'CONNOR,
" *National Bank Examiner in Charge.*"

On the 24th day of February, 1932, this item was protested and notice of demand and protest was given to the department of public works, Hornell, N. Y.; to this plaintiff at Pittsburg, Penn.; to the Mellon National Bank at Pittsburg, Penn., and to the Federal Reserve Bank of New York city; which notice of protest stated that the same was dishonored under section 350-j of the Negotiable Instruments Law of this State.

On the 13th day of February, 1932, that being the day on which this warrant was first presented to the First National Bank of Hornell, N. Y., for payment, this defendant had standing to its credit on the books of that bank three accounts, each of those accounts being more than enough in amount to pay the amount of this warrant. The 13th of February, 1932, was on Saturday. This bank remained open and continued the conduct of its business in due course, paying all checks drawn thereon or other demands as they were presented from ten o'clock in the morning until twelve o'clock noon of that day, at which hour the bank closed, that being its regular hour of closing. There had been a run of considerable

proportion upon the bank that day and its available currency was being rapidly depleted. After the closing of this bank on that day, and on the next day, which was Sunday, the directors held a meeting at which a national bank examiner was present, and the directors of the bank passed a resolution stating in effect that the bank was not able to continue longer and that the Comptroller of the Currency should assume possession of its assets for liquidation, and on that day a notice was posted in the window of this bank, signed by the officers and directors, stating that the bank would not open for business on the next day, which was Monday, and as a result of such action the bank did not open and the same is now in process of liquidation.

This action is now brought by the plaintiff to recover from the defendant the amount of this warrant. The defendant maintains that under the circumstances above narrated that in law it has paid this warrant, although not so in fact, and that the loss must be sustained by this plaintiff.

The instrument in question is not a negotiable instrument but is a warrant of a municipality drawn upon its chief fiscal agent, but is made payable at a bank. (2 Dillon Mun. Corp. § 856; *Hornblower* v. *City of Pierre*, 241 Fed. 450.)

The First National Bank of Hornell, N. Y., was brought into existence under Federal legislation. It is necessarily, therefore, subject to the authority of the United States. However, even though national banks are under the paramount authority of the United States, nevertheless such banks are subject to the laws of a State in respect to their affairs, unless such laws are in conflict with the paramount law of the United States. (*First National Bank* v. *Missouri*, 263 U. S. 640.)

The Federal Reserve Board, acting under the authority of the Federal Reserve Law, has promulgated certain regulations regarding the collection of checks and instruments of this character. Subdivision 3 of section V of regulation J, September 1, 1930, of the Federal Reserve Board provides that a Federal Reserve bank may in its discretion and at its option accept in payment or in remittance for items sent to collecting banks such as this, cash, bank drafts, transfers of funds, or bank credits, or other forms of payment or remittance acceptable to the collecting Federal Reserve bank, and that such Federal Reserve banks shall not be liable for the failure of the drawee bank or any agent to pay or remit for such checks nor for any loss resulting from the acceptance in lieu of cash such other methods of payment. Subdivision 2 of the same section of the same regulation authorizes a Federal Reserve bank to present checks for payment or to send checks for collection

direct to the bank on which they are drawn or to which they are payable.

Section 350-h of article 19-A of the Negotiable Instruments Law (as added by Laws of 1929, chap. 589) also provides that any agent collecting bank may receive in payment of an item without becoming responsible as debtor therefor, whether presented by mail, through the clearing house or over the counter of the drawee or payor, in lieu of money, the check or draft of the drawee or payor, upon another bank. It will, therefore, be observed that the rule heretofore existing that only cash is a legal payment for items presented through a collecting bank has been changed by statute in this State and by regulations of the Federal Reserve Bank in the United States.

There is nothing in the Federal Constitution which prohibits a depositor from consenting, when he draws a check, that payment may be made by a draft. And, as the statute is prospective in its operation, there is no constitutional obstacle to a State's providing that, in the absence of dissent, consent shall be presumed. Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms. (*Farmers & Merchants Bank of Monroe, N. C.*, v. *Federal Reserve Bank of Richmond, Va.*, 262 U. S. 649.)

There was passed by the Legislature of this State an act known as " Provisions for Bank Collections," being article 19-A of the Negotiable Instruments Law. This became a law April 12, 1929. It was a bank collection code recommended by the American Bankers Association and it has been enacted into law in a large number of States of this country. It radically changed in many respects the law as it had formerly existed and the evident intent and purpose of it was to make the law uniform in this country as to the duties and liabilities of collecting banks.

Section 350-f of this act reads as follows: " Items received through the mail. Where the item is received by mail by a solvent drawee or payor bank, it shall be deemed paid when the amount is finally charged to the account of the maker or drawer."

The defendant maintains in this action that when the item in question was received by the First National Bank of Hornell and the same was charged upon the books of that bank against the city of Hornell it was a payment of that item and bars the plaintiff from a recovery here.

The question immediately arises as to the meaning of the words " by a solvent drawee or payor bank." Was the First National

Bank of Hornell, N. Y., a solvent bank when this item was presented to it on Saturday morning between the hours of ten o'clock and twelve o'clock, when at twelve o'clock on that same Saturday it closed its doors not to reopen again?

Insolvency of a national bank consists in the inability to meet its obligations in the ordinary course of business as they accrue. (*Federal Intermediate Credit Bank of Omaha* v. *L'Herisson*, 33 F. [2d] 841.)

A bank is in contemplation of insolvency when the fact becomes reasonably apparent to its officers that the concern will presently be unable to meet its obligations, and will be obliged to suspend its ordinary operations. (*Roberts* v. *Hill*, 24 Fed. 571; *Ball* v. *German Bank*, 187 id. 750, 753.)

A bank is solvent when it has enough assets to pay within a reasonable time all of its liabilities through its own agencies and is insolvent when unable to meet its liabilities as they become due in the ordinary course of business. (*Federal Reserve Bank of San Francisco* v. *Idaho, etc., Seed Growers' Association*, 8 F. [2d] 922.)

The definition of a solvent debtor in the ordinary accepted meaning of the term is a person who has sufficient property to pay all his debts. (*People* v. *Halsey*, 36 How. Pr. 487, 505; *Matter of Auditore*, 136 Misc. 664, 672; *Marsh* v. *Dunckel*, 25 Hun, 167, 170; *Herrick* v. *Borst*, 4 Hill, 650.)

Measured by these standards can it be said that the First National Bank of Hornell at the time it forwarded this draft to the Federal Reserve bank, and at the time that it charged the amount of this warrant to the account of the city of Hornell, was solvent? There was a run upon the bank at that time. It is evident from the later acts of the officers of this bank that they doubted its solvency because when the bank closed on Saturday noon it closed entirely, and on Sunday the situation was critical enough so that the directors of the bank, together with a bank examiner, met at the banking house and passed a resolution in which they recite that they believe it was for the best interest of all concerned that the bank be given over to the Comptroller of the Currency in order to conserve its assets to satisfy its liabilities.

In determining whether or not this bank was solvent, the ordinary meaning of the term must be given to the word " solvent " as men of affairs usually use that term.

As the Court of Appeals has said: " The cardinal rule in the interpretation of statutes is to give effect to the intention of the legislative body which enacted them. This intention is primarily to be ascertained from the language used, giving thereto the

ordinary meaning." (*Osborne* v. *International Railway Co.*, 226 N. Y. 421, 425.)

The best rule in this particular case to use in measuring the word "solvent," is what the officers of the bank themselves thought, and by what they did. A bank may pay all of the obligations presented to it on a certain day and still be hopelessly insolvent. This bank gave to the Federal Reserve bank for this collection item an order upon the Chase National Bank of New York, which was worthless, because, before the draft could be presented to its correspondent, by a voluntary act upon its part, it closed its doors and the payment of the draft was thereby prohibited.

The remarks of Mr. Justice FIELD in the case of *Ho Ah Kow* v. *Nunan* (5 Sawy. 552) are especially appropriate here. He said: "We cannot shut our eyes to matters of public notoriety and general cognizance. When we take our seats on the bench we are not struck with blindness, and forbidden to know as judges what we see as men."

A finding must be made upon this record that this payor bank was not solvent within the provisions of section 350-f of article 19-A of the Negotiable Instruments Law.

The owner of the warrant, this plaintiff, elected to treat as dishonored this item now in suit. Under section 350-j of the same act the same was treated as dishonored by non-payment and was protested with reasonable diligence.

The purpose of this section, as stated by its framers, is to permit the agent collecting bank, at its option, to continue the liability of the drawer or maker or indorsers upon a check not presented over the counter or through the clearing house, but by mail, where the drawee or payor defaults in making payment because of its insolvency.

The drawer who gives his check upon a bank which cannot pay should not be relieved of his obligation by the mere charging of the check to his account and the issuance by the drawee of a worthless draft therefor, but should be compelled to stand for the solvency of his bank, which is his paying agent, until the latter's draft is at last paid.

In this case the city of Hornell has not paid this plaintiff for the goods that it furnished. The First National Bank of Hornell, which was the paying agent of the city of Hornell, gave a worthless draft for it. It is difficult to see where any inequity or injustice is done if that draft is returned to the bank which gave it and the debtor is called upon to pay its legal and lawful obligations.

Irrespective of the statute above quoted the Court of Appeals in this State in the case of *Thomas* v. *Board of Supervisors of*

*Westchester County* (115 N. Y. 47), upon facts strikingly similar to the facts here, held that the debtor was not discharged from his indebtedness by the issuance and sending of a worthless draft by his bank to his creditor in payment of a debt owed by the debtor.

The court in discussing the invalidity of payment by such a draft and quoting from the case of *Roberts* v. *Fisher* (43 N. Y. 159) said: " Upon broad principles of justice, it would seem that a man should not be allowed to pay a debt with worthless paper, though both parties supposed it to be good."

The same legal proposition was held by the United States Court of Appeals in the action of *Cleve* v. *Craven Chemical Company* (18 F. [2d] 711).

The giving of a worthless check or draft unless by express agreement between the parties is not a payment of the original indebtedness. (*Turner* v. *Bank of Fox Lake*, 4 Abb. Ct. App. Dec. 434; *McIntosh* v. *Tyler*, 47 Hun, 99; *Wilmot Engineering Co.* v. *Blanchard*, 208 App. Div. 218; *Burkhalter* v. *Second National Bank*, 42 N. Y. 538.)

A very interesting note upon this question showing the holdings of the courts in the different States of this country is found in volume 35 of the Lawyers Reports Annotated (N. S.) beginning on page 1, and a collation of authorities in New York upon this question will be found on page 30.

This evidence shows that the plaintiff and its agents acted in good faith and with due diligence.

The plaintiff is entitled to judgment for the relief demanded and findings may be prepared.