THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
FRANKLIN NATIONAL BANK OF FRANKLIN SQUARE, Appellant.

Argued May 26, 1953; decided July 14, 1953.

*Charles P. Grimes, Sidney Friedman* and *Herbert Dannett* for appellant. I. Insofar as section 258 of the Banking Law prohibits national banks from quoting the very words of the Federal Reserve Act authorizing them to receive and pay interest on " savings deposits," it directly conflicts with the purposes of Congress and the paramount laws of the United States. (*Easton* v. *Iowa,* 188 U. S. 220; *Downey* v. *City of Yonkers,* 106 F. 2d 69, 309 U. S. 590; *Clement Nat. Bank* v. *Vermont,* 231 U. S. 120; *Costanzo* v. *Tillinghast,* 287 U. S. 341; *Zellerbach Co.* v. *Helvering,* 293 U. S. 172; *Hassett* v. *Welch,* 303 U. S. 303; *Pennoyer* v. *McConnaughy,* 140 U. S. 1; *Inland Waterways Corp.* v. *Young,* 309 U. S. 517; *Colorado Bank* v. *Bedford,* 310 U. S. 41; *Florida* v. *Mellon,* 273 U. S. 12; *Burnes Nat. Bank* v. *Duncan,* 265 U. S. 17.) II. Insofar as subdivision 1 of section

258 prohibits national banks from using the words " saving ", " savings " or their " equivalent ", it unduly discriminates against such banks. (*Mount Pleasant Nat. Bank* v. *Duncan,* Fed. Cas. No. 4804; *First Nat. Bank* v. *Hartford,* 273 U. S. 548; *Van Reed* v. *People's Nat. Bank,* 198 U. S. 554; *Union Bank & Trust Co.* v. *Phelps,* 288 U. S. 181; *Burnes Nat. Bank* v. *Duncan,* 265 U. S. 17; *People* v. *Mechanics & Traders' Sav. Inst.,* 92 N. Y. 7; *Provident Sav. Inst.* v. *Malone,* 221 U. S. 660; *Mercantile Bank* v. *New York,* 121 U. S. 138; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79.) III. Insofar as subdivision 1 of section 258 prohibits national banks from using the words " saving ", " savings " or their " equivalent ", it unduly interferes with and hampers the operations of national banks. (*McCulloch* v. *State of Maryland,* 4 Wheat [U. S.] 316; *Farmers' & Mechanics' Nat. Bank* v. *Dearing,* 91 U. S. 29; *Davis* v. *Elmira Sav. Bank,* 161 U. S. 275; *Easton* v. *Iowa,* 188 U. S. 220; *First Nat. Bank* v. *California,* 262 U. S. 366; *Oklahoma Tax Comm.* v. *Texas Co.,* 336 U. S. 342; *Penn Dairies* v. *Milk Control Comm.,* 318 U. S. 261; *First Nat. Bank* v. *Missouri,* 263 U. S. 640; *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539; *Osborn* v. *Bank of United States,* 9 Wheat. [U. S.] 738.) IV. There is no basis for the provision of the judgment enjoining defendant " from in any way soliciting or receiving deposits as a savings bank ". Not a scintilla of evidence appears that it posed as a savings bank. (*People* v. *Binghamton Trust Co.,* 139 N. Y. 185; *Topol* v. *Smoleroff Development Corp.,* 264 App. Div. 164; *McCarty* v. *Constable,* 221 App. Div. 307; *Eton Chemists* v. *Sussman,* 278 App. Div. 899.)

*Peter Keber* and *Theodore G. Metzger* for New York State Bankers Association, *amicus curiæ,* in support of appellant's position. I. Whatever the basis for legislative classification of savings accounts that may once have existed, such basis has been abandoned by the Legislature with the result that the prohibition contained in subdivision 1 of section 258 of the Banking Law no longer has any validity in fact or in law. (*Hartford Co.* v. *Harrison,* 301 U. S. 459; *Royster Guano Co.* v. *Virginia,* 253 U. S. 412; *Air-Way Corp.* v. *Day,* 266 U. S. 71; *People* v. *Binghamton Trust Co.,* 139 N. Y. 185; *People* v.

*Mechanics & Traders' Sav. Inst.,* 92 N. Y. 7.) II. The Legislature by gradual enlargement of the powers of savings banks has narrowed the historic legal differences between savings banks and commercial banks with the result that the original justification for the prohibition contained in subdivision 1 of section 258 has gradually tended to disappear.

*Nathaniel L. Goldstein, Attorney-General (Daniel M. Cohen* and *Wendell P. Brown* of counsel), for respondent. I. Section 258 of the Banking Law, prohibiting banks other than savings banks from soliciting or receiving deposits as a savings bank in any way, and specifically by using the words ". saving " and " savings " or their equivalent, constitutes a proper exercise of the police power. It is designed to protect the public from the consequences of its own ignorance and carelessness as well as from intentional misrepresentation. (*Engel* v. *O'Malley,* 219 U. S. 128; *Musco* v. *United Sur. Co.,* 196 N. Y. 459; *Matter of Brous* v. *Smith,* 304 N. Y. 164; *Queenside Hills Co.* v. *Saxl,* 328 U. S. 80; *Dillingham* v. *McLaughlin,* 264 U. S. 370; *Semler* v. *Dental Examiners,* 294 U. S. 608; *Trade Comm.* v. *Raladam Co.,* 316 U. S. 149; *People* v. *Binghamton Trust Co.,* 139 N. Y. 185; *People* v. *Doty,* 80 N. Y. 225; *Bank of Redemption* v. *Boston,* 125 U. S. 60.) II. Congress has not authorized national banks to violate State standards of fair competition by using the word " saving " or " savings " in advertising the performance of their functions as national banks. Nor has Congress authorized national banks in any other way to masquerade as State-organized " savings banks ". (*Commonwealth* v. *McHugh,* 326 Mass. 249; *Lewis* v. *Fidelity Co.,* 292 U. S. 559; *Burnes Nat. Bank* v. *Duncan,* 265 U. S. 17; *First Nat. Bank* v. *Union Trust Co.,* 244 U. S. 416; *Rushton* v. *Michigan Nat. Bank,* 298 Mich. 417; *Union Nat. Bank* v. *Louisville, N. A. & C. Ry.,* 163 U. S. 325; *Middletown Trust Co.* v. *Middletown Nat. Bank,* 110 Conn. 13; *Regents* v. *Carroll,* 338 U. S. 586; *Savage* v. *Jones,* 225 U. S. 501; *Colorado Bank* v. *Bedford,* 310 U. S. 41.) III. Section 258, which is nondiscriminatory, since it applies to State-chartered banks as well as to national banks, is constitutional. It does not violate the supremacy clause of the Federal Constitution. (*McCulloch* v. *State of Maryland,* 4 Wheat [U. S.] 316; *Penn Dairies* v. *Milk Control Comm.,* 318 U. S. 261; *Metcalf & Eddy*

v. *Mitchell,* 269 U. S. 514; *State* v. *People's Nat. Bank,* 75 N. H. 27; *Jennings* v. *U. S. F. & G. Co.,* 294 U. S. 216; *First Nat. Bank* v. *California,* 262 U. S. 366; *Schramm* v. *Bank of California,* 143 Ore. 546; *Roth* v. *Delano,* 338 U. S. 226; *Matter of Baldwinsville Fed. Sav. & Loan Assn.,* 268 App. Div. 414; *Lauer* v. *Bayside Nat. Bank,* 244 App. Div. 601; *Burnes Nat. Bank* v. *Duncan,* 265 U. S. 17.)

DESMOND, J. Defendant is a national bank, organized under the National Bank Act (U. S. Code, tit. 12, § 21 *et seq.*). Pursuant to authorization by the Comptroller of the Currency, it transacts banking business in the village of Franklin Square, Nassau County, New York. In this suit, brought by the State because of alleged violations by defendant of subdivision 1 of section 258 of the New York Banking Law, defendant has been restrained and enjoined " from advertising or otherwise using the word ' saving ' or ' savings ' in relation to its banking or financial business in its dealings with the public, and from in any way soliciting or receiving deposits as a savings bank ". Section 258 (subd. 1, *supra*) is in full as follows:

" § 258. *Prohibition of unauthorized savings banks and use of the word ' savings '; exceptions as to school savings.*

" 1. No bank, trust company, national bank, individual, partnership, unincorporated association or corporation other than a savings bank or a savings and loan association shall make use of the word ' saving ' or ' savings ' or their equivalent in its banking or financial business, or use any advertisement containing the word ' saving ' or ' savings,' or their equivalent in relation to its banking or financial business, nor shall any individual or corporation other than a savings bank in any way solicit or receive deposits as a savings bank; but nothing herein shall be construed to prohibit the use of the word ' savings ' in the name of the Savings and Loan Bank of the State of New York or in the name of a trust company all of the stock of which is owned by not less than twenty savings banks. Any bank, trust company, national bank, individual, partnership, unincorporated association or corporation violating this provision shall forfeit to the people of the state for every offense the sum of one hundred dollars for every day such offense shall be continued."

It is undisputed that defendant has, since 1947, used the words " saving " and " savings " in many different ways, in the advertising and conduct of its banking operations. It has, by advertising and otherwise, solicited " savings accounts " has put up over some of its tellers' windows, signs containing the word " savings ", has a special department for " Children's Savings ", refers in its literature and printed forms to its " savings department " and in general, it routinely and extensively uses the words " saving " and "savings " to bring to itself " savings deposits ", in competition with savings banks and savings and loan associations in Nassau County and elsewhere. Thus it is clear, without further elaboration of the facts, that this national bank has in fact violated so much of section 258 (subd. 1, *supra*) as prohibits the use of the two words " saving " and " savings ". However, we find in the record no evidence at all that defendant has violated, or threatens or intends to violate, the other prohibition of the above-quoted statute, which runs against " soliciting or receiving deposits as a savings bank ". Therefore, so much of the injunction as prohibits " soliciting or receiving deposits as a savings bank ", is unwarranted and must be stricken, regardless of anything else in the case (1 High on Injunctions [4th ed.], § 22; *Exchange Bakery & Restaurant v. Rifkin,* 245 N. Y. 260, 265; 28 Am. Jur., Injunctions, § 29).

That brings us to our real question: is the State statute, above quoted, unconstitutional as contravening a controlling and overriding Federal statute on the same subject, and as interfering with the operations of a national bank?

First, as to whether there is a contrary Federal statute: the enactments which, according to appellant, authorize it, as a national bank, to use and advertise the word " saving " or " savings " are in the Federal Reserve Act, and are sections 371 and 583–586 of title 12 of the United States Code. The statutory language on which appellant relies is in section 371 (U. S. Code, tit. 12), as follows: " Any such [national banking] association may continue hereafter as heretofore to receive time and savings deposits and to pay interest on the same, but the rate of interest which such association may pay upon such time deposits or upon savings or other deposits shall not exceed ", and in sections 583–586 (U. S. Code, tit. 12 [now

in U. S. Code, tit. 18, § 709]), which (in a negative sort of way) authorize national banks to advertise, and which contain no prohibition against the use, in such advertising, of the word " saving " or the word " savings " (see, also, U. S. Code, tit. 12, § 24, as to " incidental powers " of national banks, and *Hernandez* v. *First Nat. Bank*, 125 Neb. 199, 205). Defendant-appellant says that the matter is as simple as this: Congress has (expressly) licensed these national banks to receive " savings deposits " and pay interest on " savings ", and has (inferentially) licensed them to advertise to the public the provision of such banking services. So, says appellant, we have a direct conflict between the authorizations of the Federal statutes and the prohibitions of the State Banking Law.

There is no dispute as to the respective roles which the United States Government and the several States play, generally, in regulating national banks. Under section 8 of article I of the Federal Constitution, Congress has power to, and does, incorporate national banks and has the paramount power of regulating them; any applicable Federal laws are supreme in the field; national banks are subject in many ways to the general laws of the States in which they exist, and must abide by State regulations insofar as the latter do not collide directly with Federal laws, and insofar as they do not frustrate national banking policy or impair the position of national banks in discharging their duties; national banks must obey all non-discriminatory State laws which do not interfere with the functioning of the banks, and which do not contravene Federal laws (*First Nat. Bank* v. *California*, 262 U. S. 366, 368; *Burnes Nat. Bank* v. *Duncan*, 265 U. S. 17; *Lewis* v. *Fidelity Co.*, 292 U. S. 559, 566; *Seabury* v. *Green*, 294 U. S. 165, 169; *Jennings* v. *U. S. F. & G. Co.*, 294 U. S. 216; *Anderson Nat. Bank* v. *Luckett*, 321 U. S. 233; *Roth* v. *Delano*, 338 U. S. 226, 230; *Standard Oil Co.* v. *New Jersey*, 341 U. S. 428, 441; *Lauer* v. *Bayside Nat. Bank*, 244 App. Div. 601; *Matter of Baldwinsville Fed. Sav. & Loan Assn. [Van Wie]*, 268 App. Div. 414, 422, 423; *Clark* v. *First Nat. Bank of Morrisville*, 130 Misc. 352, 354; *United States Pipe & Foundry Co.* v. *City of Hornell*, 146 Misc. 812, 815; *Matter of Keene*, 152 Misc. 424, 425; 7 Michie on Banks and Banking, ch. 15, §§ 3, 4, 5). Clearly, " a national bank is subject to

state law unless that law interferes with the purposes of its creation, or destroys its efficiency, or is in conflict with some paramount federal law '' (*Lewis* v. *Fidelity Co., supra,* 292 U. S., at p. 566).

Since our State statute clearly and unambiguously forbids the very thing defendant is admittedly doing, our problem comes down to this: do the Federal statutes above cited contain, or amount to, an express authorization to national banks for such activity, that is, for using the State-prohibited words '' saving '' and '' savings '', or is the Federal statutory reference to '' savings deposits '' merely descriptive of a well-known type or kind of bank deposits, rather than a statutory license to use certain specified words, which in turn are forbidden in this State? We conclude, for reasons hereafter stated, that there is no direct conflict, between the Federal and State statutes, as to what national banks may and may not do by way of advertising for, and taking, '' savings deposits ''. The State of New York does not prevent defendant from carrying on a particular kind of banking business, but does forbid a misleading description of that business.

State laws promoting fairness in business transactions should, of course, apply to national banks (*Schramm* v. *Bank of Cal.,* 143 Ore. 546, 578; *Steadman* v. *Redfield,* 67 Tenn. 337, 338–339; and see remarks of Justice HOLMES, re competition, in *Abilene Nat. Bank* v. *Dolley,* 228 U. S. 1, 4). Our State law expresses an old, wise policy of protecting our citizens against being fooled (see *People* v. *Binghamton Trust Co.,* 65 Hun 384, affd. 139 N. Y. 185, as to the legislative purpose). So read, our State statute is valid and enforcible despite a superficial, or seeming, contradiction between the phrasing of the two enactments. In other words, while the Federal statute prescribes the kind of business that national banks may carry on, the State statute, to avoid deception of our people, interdicts the use, in that Federally-prescribed business, of certain nonessential words, and there is no Federal statute relating to the use of those words, as such. Congress, while interested in protecting its creatures, the national banks, in the use of their proper powers, has no interest in their use of deceptive verbiage. The Attorney-General of New York, in his brief, makes it clear that this State does not claim for sav-

ings banks a monopoly on receipt of deposits of the " savings " type, but he insists that the State of New York is acting within its powers in seeing to it that members of the public are not misled into believing that commercial banks, like defendant, are mutual savings banks. He admits that the national banks are empowered to handle " savings " type deposits, and to advertise, but he argues that the State is not hampering either of those activities.

It is unnecessary here to describe in detail the differences between commercial and savings banks (see New York State Banking Law, arts. III, V, VI; 8 Michie on Banks and Banking, ch. 16, § 1; *Matter of Wilkins,* 131 Misc. 188, 193; *State* v. *People's Nat. Bank,* 75 N. H. 27; *Bank of Redemption* v. *Boston,* 125 U. S. 60, and see the learned opinion of the Special Term Justice in the present case, 200 Misc. 557, 566 *et seq.*). The difference, shortly stated, is this: commercial banks, State and national, are profit-making business corporations owned by stockholders, while, in New York at least, savings banks are mutual institutions, having no stockholders but earning money for the depositors, the fundamental purpose of their existence being protection of small deposits, and their principal method of accomplishing that purpose being caution and conservatism in investments (see 1 Morse on Banks and Banking [6th ed.], § 3).

On the question of whether this New York statute unduly impedes national banks in carrying out their lawful purposes, it is significant, although not conclusive, that this record shows that none of the national banks operating in New York State, except defendant, have used the word " saving " or " savings ", and that all of them (except defendant) have found it possible (although seriously inconvenient, say defendant's witnesses) to carry on the business of receiving this type of deposit, by the use, in their advertising and other literature and business forms, of such synonymous expressions as " special interest account ", " thrift account " and " compound interest account ".

The New York Legislature's design and effort to prevent deception as to savings banks has a long history. The first enactment was in chapter 132 of the Laws of 1858, which, among

other things, made it unlawful for a certain kind of commercial bank to " put forth a sign as a savings bank " (see, also, L. 1875, ch. 371; *People* v. *Doty,* 80 N. Y. 225). The prohibition against describing a commercial bank as a savings bank was added to and strengthened by a 1905 enactment (ch. 564), which forbade the use of the word " savings ", by any but savings banks or building and loan associations. Thus, the general legislative purpose has been asserted for nearly a century and the statute in its present form is nearly a half century old. The validity of this purpose and the general validity of these statutes has, over and over again, been asserted by the State Attorney-General (see 1898 Atty. Gen. 265–267; 1902 Atty. Gen. 314–315; 1907 Atty. Gen. 473–475; 1908 Atty. Gen. 382–383). The 1907 opinion contained a specific holding that national banks had no right to hold themselves out as savings banks, or to advertise as such (however, there was then no specific reference in the Federal laws to " savings accounts "). All of this adds up to this result: that the New York policy and method is an old and reasonable one, that it does not seem, when complied with by other national banks in this State, to have had seriously harmful effects on them, and that, accordingly, the legitimate national banking activity, of taking and advertising for interest accounts, is not substantially interfered with by the State's prohibition of the use of misleading words. Insofar as the record presents a question of fact as to the substantiality of that interference, the weight of evidence confirms the finding of the Appellate Division that the number of accounts of the " savings type " has increased greatly in those national banks in the State which have obeyed subdivision 1 of section 258, and that those national banks " have enjoyed continued prosperity notwithstanding said statute " (281 App. Div. 757, 758).

We see no benefit to appellant's position in the fact that since 1905, our statute has permitted a " savings and loan association " as well as a " savings bank " to use the words " saving " and " savings ". The character and purposes of savings and loan associations are, under New York law (see Banking Law, art. X), so similar to those of savings banks as to call for the same kind of protection.

The judgment of the Appellate Division should be modified by striking from the second ordering paragraph thereof the words " and from in any way soliciting or receiving deposits as a savings bank " and, as so modified, affirmed.

Fuld, J. (dissenting). While federal legislation explicitly authorizes national banks to receive " savings deposits " and to pay interest on " savings " (Federal Reserve Act, U. S. Code, tit. 12, § 371) and vests them with " such incidental powers as shall be necessary " (National Bank Act, U. S. Code, tit. 12, § 24, subd. 7; see *Clement Nat. Bank* v. *Vermont,* 231 U. S. 120, 140), this state's Banking Law, in contrast, unequivocally prohibits a " national bank " from making " use of the word ' saving ' or ' savings ' or their equivalent in its banking or financial business, or use [of] any advertisement containing the word ' saving ' or ' savings,' or their equivalent in relation to its banking or financial business " (Banking Law, § 258, subd. 1).

Mere reading of these two provisions reveals a conflict, patent and irreconcilable. New York's Banking Law provision severely limits the power of national banks to do exactly what the federal statute authorizes. (See, e.g., 2 Paton's Digest of Legal Opinions [1926 ed.], p. 1226; 1 Paton's Digest of Legal Opinions [1940 ed.], p. 645.) The right to accept " savings deposits " and maintain " savings accounts," can mean very little if the bank, by virtue of state statute, must hide that fact or announce it in terms that fail to make it clear. Indeed, to tell a bank that it can receive " savings deposits ", and yet must not publicize the fact is very much like telling a property owner that he may produce vegetables, but must not water or cultivate them.

In a very real sense, the state statute hampers the conduct of banking activities deemed by the federal government to be necessary and beneficial. As the court at Special Term succinctly declared, " To deny to defendant the right to invite the public by all proper means of expression at its disposal, to make ' savings deposits ' with it, is to curtail the power to receive such accounts, to reduce its effectiveness as an agency handling that kind of financing — in short, to defeat one of the main purposes for which it was created by Congress. Under such conditions,

one law or the other must give way. The State law must yield to the Federal law — the supreme law of the land (U. S. Const., art. VI)." (200 Misc. 557, 571.)

The state acknowledges, as, of course, it must, that national banks are empowered, as an incident of their business, to receive " savings deposits " and maintain " savings accounts." Since those activities are concededly legitimate and in the public interest, there is no basis for the claim that advertising them *in the precise language of the Federal Reserve Act* can be deceptive or harmful. If a national bank conducts only the type of business which the Federal Reserve Act sanctions and if it informs the public of the nature of that business by using only the exact language of the federal enactment, how may it be said — as it is (opinion of DESMOND, J., p. 460) — that the state law serves the vital function " of protecting our citizens against being fooled "? [1]

Section 258 of the Banking Law, insofar as it prohibits national banks from quoting the very words of the Federal Reserve Act, authorizing them to receive and pay interest on " savings deposits ", clashes with the paramount federal law and, accordingly, must be stricken as unconstitutional. (Cf., e.g., *Easton* v. *Iowa,* 188 U. S. 220, 229–230, 238; *First Nat. Bank* v. *California,* 262 U. S. 366, 368 *et seq.*; *Fidelity Nat. Bank & Trust Co.* v. *Enright,* 264 F. 236; *Springfield Inst. for Sav.* v. *Worcester Fed. Sav. & Loan Assn.,* 329 Mass. 184, certiorari denied 344 U. S. 884.)

The judgment of the Appellate Division should be reversed and that of Special Term affirmed, with costs in this court and in the Appellate Division.

LEWIS, Ch. J., CONWAY, DYE and VAN VOORHIS, JJ., concur with DESMOND, J.; FULD, J., dissents in opinion in which FROESSEL, J., concurs.

Judgment accordingly.

---

1. Virtually eliminated, it should be noted, is any risk of loss to those who maintain a " savings, time or thrift account " in a national bank; such deposits, up to $10,000 by any depositor, are insured by the Federal Deposit Insurance Corporation (Federal Deposit Insurance Act, U. S. Code, tit. 12, § 1813, subd. [1]; § 1821).