## FRANKLIN NATIONAL BANK OF FRANKLIN SQUARE *v.* NEW YORK.

No. 427. Argued March 9–10, 1954.—Decided April 5, 1954.

*Samuel O. Clark, Jr.* argued the cause for appellant. With him on the brief were *F. Gloyd Awalt, W. V. T. Justis, Keith Kelly* and *Sidney Friedman.*

By special leave of Court, *Solicitor General Sobeloff* argued the cause for the United States, as *amicus curiae,* urging reversal. With him on the brief were *Assistant Attorney General Burger, Marvin E. Frankel* and *Melvin Richter.*

*Daniel M. Cohen,* Assistant Attorney General of New York, argued the cause for appellee. With him on the brief were *Nathaniel L. Goldstein,* Attorney General, and *Wendell P. Brown,* Solicitor General.

*Peter Keber* filed a brief for the New York State Bankers Association, as *amicus curiae,* urging reversal.

*Fred N. Oliver* and *Michael F. McCarthy* filed a brief for the Savings Banks Association of the State of New York, as *amicus curiae,* supporting appellee.

Opinion of the Court by MR. JUSTICE JACKSON, announced by MR. JUSTICE FRANKFURTER.

This appeal from the Court of Appeals of New York presents the narrow question whether federal statutes which authorize national banks to receive savings deposits conflict with New York legislation which prohibits them from using the word "saving" or "savings" in their advertising or business. We think the federal and state statutes are incompatible, and in such circumstances the policy of the State must yield.

It is the policy of New York to charter and foster the mutual savings bank, a nonprofit institution whose earnings inure to the benefit of depositors rather than to stockholders. These institutions have a long history as relatively stable and safe depositaries for the accumulations of thrifty New Yorkers and as a source of credit for limited uses. They have grown to be an important part of New York's banking and economic structure. That State also charters the savings and loan association, an institution of a different type, intended to serve somewhat similar ends. The Legislature was concerned lest commercial banks, in seeking to induce deposits of the same character, so use the word "savings" as to lead uninformed and indiscriminating persons to believe that they were dealing with the chartered savings institutions. Hence, by its Banking Law, New York has forbidden use of the word "savings," or its variants, by any banks other than its own chartered savings banks and savings and loan associations.[1]

---

[1] McKinney's N. Y. Laws, Banking Law, § 258 (1), reads: "No bank, trust company, national bank, individual, partnership, unincorporated association or corporation other than a savings bank or

However, the Federal Government is a rival chartering authority for banks. Since *McCulloch* v. *Maryland,* 4 Wheat. 316, it has not been open to question that the Federal Government may constitutionally create and govern such institutions within the states. The United States has set up a system of national banks as federal instrumentalities to perform various functions such as providing circulating medium and government credit, as well as financing commerce and acting as private depositaries. Some of their functions, especially as a source for federal credit, depend upon their success in attracting private deposits. That these federal institutions may be at no disadvantage in competition with state-created institutions, the Federal Government has frequently expanded their functions and authority. Of such nature are the measures now before us.

The Federal Reserve Act provides that a national bank "may continue hereafter as heretofore to receive time and savings deposits and to pay interest on the same, but the rate of interest which such association may pay upon such time deposits or upon savings or other deposits shall not exceed the maximum rate authorized by law to be paid upon such deposits by State banks or trust com-

---

a savings and loan association shall make use of the word 'saving' or 'savings' or their equivalent in its banking or financial business, or use any advertisement containing the word 'saving' or 'savings,' or their equivalent in relation to its banking or financial business, nor shall any individual or corporation other than a savings bank in any way solicit or receive deposits as a savings bank; but nothing herein shall be construed to prohibit the use of the word 'savings' in the name of the Savings and Loan Bank of the State of New York or in the name of a trust company all of the stock of which is owned by not less than twenty savings banks. Any bank, trust company, national bank, individual, partnership, unincorporated association or corporation violating this provision shall forfeit to the people of the state for every offense the sum of one hundred dollars for every day such offense shall be continued."

panies organized under the laws of the State in which such association is located."[2] The Act authorizes the Board of Governors of the Federal Reserve System to make necessary rules and regulations,[3] which the Board has done by defining such terms as "time deposits" and "savings deposits."[4] The National Bank Act authorizes national banks to receive deposits without qualification or limitation, and it provides that they shall possess "all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this chapter."[5]

Appellant, believing it was authorized by the Federal Government to do so, used the word "saving" and "savings" in advertising, in signs displayed in the bank, on its deposit and withdrawal slips, and in its annual reports. It is beyond question that appellant violated the State's prohibition if it is a valid one.

The Attorney General of the State initiated this case by a complaint alleging such violations, seeking a broad injunction. The trial accumulated a large record devoted mainly to the merits and demerits of the New York legislation and its consequences upon banks and depositors. The trial court found no purposeful deception of the public. It held that the advertising and other use of the forbidden terms were in pursuit of implied and incidental powers conferred upon national banks by the

[2] 38 Stat. 273, 44 Stat. 1232, as amended, 12 U. S. C. (1952 ed.) § 371.

[3] 38 Stat. 262, 12 U. S. C. (1952 ed.) § 248 (i). See also 49 Stat. 714, 12 U. S. C. (1952 ed.) § 461.

[4] 12 CFR §§ 204.1, 217.1.

[5] R. S. § 5136, 12 U. S. C. (1952 ed.) § 24 (seventh).

Acts of Congress and that the New York statute in conflict with them must yield. The Appellate Division disagreed and directed a permanent injunction prohibiting the use of the term. The Court of Appeals affirmed, and we noted probable jurisdiction of an appeal.[6]

We are unable to support the contention that the authorization for national banks to receive savings deposits is limited or qualified because of the expression that they may "continue hereafter as heretofore" to do so. It appears that previous to the enactment, acceptance of such accounts by national banks had been usual but was not expressly authorized. We do not think the Federal Reserve Act should be construed to freeze individual banks or those located within any state to the customs and practices preceding the statute. We read the Act as declaratory of the right of a national bank to enter into or remain in that type of business. That has been the administrative construction, and we think it is correct.

Nor can we construe the two Federal Acts as permitting only a passive acceptance of deposits thrust upon them. Modern competition for business finds advertising one of the most usual and useful of weapons. We cannot believe that the incidental powers granted to national banks should be construed so narrowly as to preclude the use of advertising in any branch of their authorized business. It would require some affirmative indication to justify an interpretation that would permit a national

---

[6] 200 Misc. 557, 105 N. Y. S. 2d 81, rev'd, 281 App. Div. 757, 118 N. Y. S. 2d 210, aff'd, 305 N. Y. 453, 113 N. E. 2d 796, probable jurisdiction noted, 346 U. S. 908. Appellee included in its complaint a charge that appellant solicited business as a "savings bank." However, the New York Court of Appeals held that there was no evidence of such practice. Therefore, the sole question before this Court relates to appellant's other use of the prohibited words in its advertising or business.

bank to engage in a business but gave no right to let the public know about it.

Appellee does not object to national banks taking savings deposits or even to their advertising that fact so long as they do not use the word "savings." It takes the position that this word is a misnomer in New York because depositors there, as a result of the state statute, have come to think of savings accounts as something entirely different from those to which the Federal Act is referring. Regardless of whether New Yorkers are really misled by the description, the fact is that Congress has given a particular label to this type of account. Whatever peculiar meaning the word may have in New York, it is a word which aptly describes, in a national sense, the type of business carried on by these national banks. They do accept and pay interest on time deposits of people's savings, and they must be deemed to have the right to advertise that fact by using the commonly understood description which Congress has specifically selected. We find no indication that Congress intended to make this phase of national banking subject to local restrictions, as it has done by express language in several other instances.[7]

There appears to be a clear conflict between the law of New York and the law of the Federal Government. We cannot resolve conflicts of authority by our judgment as to the wisdom or need of either conflicting policy. The

---

[7] *E. g.*, R. S. § 5155, 12 U. S. C. (1952 ed.) § 36 (c) (establishment of branch banks); R. S. § 5136, 12 U. S. C. (1952 ed.) § 24 (eighth) (contributions to charitable instrumentalities); R. S. § 5153, 12 U. S. C. (1952 ed.) § 90 (security for the deposit of state funds); R. S. § 5197, 12 U. S. C. (1952 ed.) § 85, and part of the section involved in this case, 38 Stat. 273, 44 Stat. 1232, as amended, 12 U. S. C. (1952 ed.) § 371 (interest rates). Even in the absence of such express language, national banks may be subject to some state laws in the normal course of business if there is no conflict with federal law. Cf. *Anderson National Bank* v. *Luckett*, 321 U. S. 233; *McClellan* v. *Chipman*, 164 U. S. 347.

compact between the states creating the Federal Government resolves them as a matter of supremacy.[8]   However wise or needful New York's policy, a matter as to which we express no judgment, it must give way to the contrary federal policy.

The judgment of the New York Court of Appeals is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE REED, dissenting.

I dissent.   It should be noted that the New York statute, note 1 of the Court's opinion, limits the use of the words "saving" or "savings" in relation to their banking business to certain types of New York financial institutions.   These are those that are mutual in character as distinguished from stockholder-owned.   Such mutual institutions can and do pay larger returns on deposits in New York than the commercial stock-type banks, state or national, both of which are barred by the New York statute from using the word "savings" "in relation to banking or financial business."   The mutual banks have been successful in attracting a large proportion of savings deposits for over a century.   They have a remarkable record for soundness in finance and profitable operation for the benefit of the depositors.   The purpose of the New York law is to reserve the use of the word "savings" to identify the mutual type of bank operation for the public, just as the federal banking laws reserve the name "national" for a certain type of bank organized under federal law.

The Court's opinion permits the national banks to trade upon the good name of the savings banks to secure de-

---

[8] *Easton* v. *Iowa*, 188 U. S. 220, 229–230; *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 283.

posits of that type. Now they may advertise "A Savings Bank" under their corporate name; their deposit slips may say "Savings Account." As no federal statute expressly authorizes the national banks to use the words "saving" or "savings" in their advertisements, I think they must conform to the New York law for the protection of the public from misunderstanding. I would not imply a federal privilege to use "savings" in advertising from the fact that national banks may accept savings deposits. The cases cited by the Court in note 7 sustain that view. I know of no precedents that approve such a limitation on state power as the Court now announces.