# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3166

_____

Bank One, Utah, National Association,   *
                                         *

         Plaintiff/Appellant,      *

v.                             *

Michael K. Guttau, in his official    *
capacity as Superintendent of Banking  *
and Administrator of Electronic Transfer *
of Funds, Iowa Division of Banking,   *
Iowa Department of Commerce,      *

         Defendant/Appellee.     *

_____

Appeal from the United States
District Court for the
Southern District of Iowa.

Comptroller of the Currency,      *

         Intervenor Plaintiff/    *
         Amici on behalf of       *
         Appellant,           *

Consumer Bankers Association; Cash  *
Station, Inc.; NationsBank, N.A.;    *
First National Bank of McCook,     *
Nebraska; Norwest Bank Iowa, N.A.;  *
U.S. Bancorp; Firstar Corporation,   *

         Amici on behalf of       *
         Appellant,           *

Iowa Bankers Association; Iowa     *
Independent Bankers Association;     *
Iowa Credit Union League,     *
    *
        Amici on behalf of     *
        Appellee.     *

_____

Submitted: January 12, 1999

Filed: September 2, 1999
_____

Before RICHARD S. ARNOLD, BRIGHT, and WOLLMAN,[1] Circuit Judges.
_____

WOLLMAN, Chief Judge.

Bank One, Utah, N.A. (Bank One) appeals from the district court's denial of a preliminary injunction that would prevent the state of Iowa (the State) from enforcing Iowa statutes restricting Bank One's operation of automated teller machines (ATMs). Because we find that certain provisions of the Iowa Electronic Funds Transfer Act (EFTA), Iowa Code § 527, are preempted by section 36 of the National Bank Act (NBA), 12 U.S.C. §§ 21-216d, we reverse the district court's order and remand for the entry of a permanent injunction prohibiting enforcement of the relevant sections.

**I.**

Bank One is a national bank organized under the NBA. Its main office is located in Salt Lake City, Utah, and it has no branch offices in Iowa. In 1997, Bank One

_____

[1]Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

installed ATMs at twenty-four retail store locations in Iowa, including eleven at Sears, Roebuck & Co. (Sears) stores throughout the state.

In October of 1997, the Iowa Superintendent of Banking ordered Sears to cease operation of the ATMs, citing multiple violations of the Iowa EFTA. On December 26, 1997, the State filed an action in state court against Sears to prevent the operation of the ATMs and to assess a fine. As a result, Sears instructed Bank One to remove all of its ATMs from Sears stores in Iowa. Bank One complied with Sears's request and placed the ATMs in storage pending the outcome of this litigation.

Bank One filed suit in district court, seeking a declaration that provisions of the Iowa EFTA restricting out-of-state banks from operating ATMs within Iowa are preempted by the NBA and praying for the issuance of a preliminary and permanent injunction. Bank One's complaint also alleged that the restrictions violate several provisions of the United States Constitution. The district court denied Bank One's motion for a preliminary injunction, finding that the challenged provisions of Iowa law were not preempted and concluding that Bank One was unlikely to succeed on any of its constitutional claims.

## II.

Although Bank One's motion asked for a preliminary injunction, we may consider it as a motion for a permanent injunction. See generally Minnesota Dep't of Econ. v. Riley, 107 F.3d 648, 649 (8th Cir. 1997) (reviewing a district court grant of a preliminary injunction and granting a permanent injunction because all issues were questions of law). Because Bank One and the State disagree only on questions of law, nothing remains for the district court to resolve regarding the underlying facts. Accordingly, we must determine whether a permanent injunction is appropriate.

-3-

In determining whether a preliminary injunction should be issued, a district court must take into account the threat of irreparable harm to the movant, the balance between this harm and the harm to the other party if the injunction is granted, the probability of movant's success on the merits, and the public interest. See Dataphase Systems, Inc. v. C. L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must attain success on the merits. See Amoco Prod. Co. v. Village of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987).

Although we have said that the four Dataphase factors are applicable in cases involving permanent injunctions, see, e.g., Randolph v. Rodgers, 170 F.3d 850, 857 (8th Cir. 1999); Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998); Fogie v. Thorn Americas, Inc., 95 F.3d 645, 654 (8th Cir. 1996), we conclude that the balance-of-harm and public-interest factors need not be taken into account in a situation such as that which exists in the present case. If Bank One proves that the relevant provisions of the Iowa EFT are preempted by the NBA and that it will suffer irreparable harm if the State is not enjoined from enforcing those provisions, then the question of harm to the State and the matter of the public interest drop from the case, for Bank One will be entitled to injunctive relief no matter what the harm to the State, and the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law.

**A.**

The Iowa EFTA contains several provisions relevant to the placement and operation of ATMs within the state. Among other things, it contains an in-state office requirement for the establishment of ATMs:

> A satellite terminal shall not be established within this state except by a
> financial institution whose principal place of business is located in this

state, one which has a business location licensed in this state under chapter 536A, or one which has an office located in this state and which meets the requirements of subsection 4.

Iowa Code § 527.4(1) (citing id. § 527.4(4), which sets various restrictions on the operation of ATMs). All banks, including national banks, must file an informational statement with the Iowa Superintendent of Banking (the administrator) stating the name of the business, the location of the terminal, a schedule of required charges, and an agreement that the bank will maintain the terminal in compliance with the Iowa EFTA. See id. § 527.5(3). If the administrator does not respond to the informational statement within thirty days of its filing, the informational statement is deemed to have been expressly approved. See id. § 527.5(7).

In addition to the in-state office and approval requirements, the Iowa EFTA limits the advertising that may be placed on an ATM. It provides:

> A satellite terminal in this state shall bear a sign or label identifying each type of financial institution utilizing the terminal. A satellite terminal location in this state shall not be used to advertise individual financial institutions or a group of financial institutions. However, a satellite terminal shall bear a sign or label no larger than three inches by two inches identifying the name, address, and telephone number of the owner of the satellite terminal. The administrator may authorize methods of identification the administrator deems necessary to enable the general public to determine the accessibility of a satellite terminal.

Id. § 527.5(5).

The NBA grants national banks the authority to exercise "all such incidental powers as shall be necessary to carry on the business of banking." First Nat'l Bank of E. Ark. v. Taylor, 907 F.2d 775, 777 (8th Cir. 1990) (quoting 12 U.S.C. § 24(Seventh)). Bank One argues that the NBA implicitly authorizes the placement of

-5-

ATMs without restriction by the states.  The provisions of the Iowa EFTA, it argues, impair the ability of a national bank to place its ATMs and to advertise thereon.

"[G]rants of both enumerated and incidental 'powers' to national banks [are] grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law."  Barnett Bank v. Nelson, 116 S. Ct. 1103, 1108 (1996).  Where state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," it may be found to be preempted.  Id. at 1108 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).  State regulations are not preempted, however, when Congress "accompan[ies] a grant of an explicit power with an explicit statement that the exercise of that power is subject to state law."  Id. at 1109.  Congress predicated the establishment of national bank branches upon compliance with state regulations.  See 12 U.S.C. § 36(c).  Therefore, in order to determine whether the NBA preempts the Iowa regulations, we must determine whether an ATM is a "branch" as defined in section 36.

In 1996, Congress amended section 36 to read, "[t]he term 'branch', as used in this section, does not include an automated teller machine or a remote service unit."  See 12 U.S.C. § 36(j).  Thus, whatever regulatory authority the states may retain with respect to national bank branches, the 1996 amendment clearly expresses Congress's intent that that authority no longer extends to national bank ATMs.

That intent is made even clearer in light of the assumption that Congress enacts legislation with knowledge of relevant judicial decisions.  See Cannon v. University of Chicago, 441 U.S. 677, 696-99 (1979).  Prior to the 1996 amendment, courts had held that because ATMs were branches they were subject to state restrictions.  See Colorado ex rel. State Banking Bd. v. First Nat'l Bank of Ft. Collins, 540 F.2d 497, 499 (10th Cir. 1976) (finding state regulation applied because ATM was a branch); Independent Bankers Ass'n of America v. Smith, 534 F.2d 921, 948 (D.C. Cir. 1976) (same); cf. Independent Bankers Ass'n v. Marine Midland Bank, 757 F.2d 453, 463

(2d Cir. 1985) (finding that an ATM was not a branch within the meaning of the section 36 because it was owned by a grocery store and merely used by a national bank). By excluding ATMs from the definition of "branch," Congress eliminated the contingency that formed the basis of those decisions and thus signaled its intention to foreclose the states from imposing location and approval restrictions on a national bank's ATMs.

Likewise, the legislative history of the 1996 amendment makes clear Congress's intent in adopting the amendment, which was enacted as part of the Economic Growth and Regulatory Paperwork Reduction Act of 1996. The purpose of this act was to "strengthen our nation's financial institutions and to increase their competitiveness." S. Rep. No. 104-185, at 1 (1996). The legislation was intended to "allow financial institutions to devote additional resources to productive activities, such as making loans, rather than to compliance with unnecessary regulations." Id. "Section [36(j)] clarifies that an 'ATM' or 'remote service unit' is not considered a 'branch' for purposes of federal bank branching law and is therefore not subject to prior approval requirements or geographic restrictions." Id. at 24.

Finally, the interpretation given the 1996 amendment by the Office of the Comptroller of the Currency (OCC), which appears in this action as an amicus supporting Bank One, supports a finding that the relevant Iowa regulations are preempted. As we stated in Taylor, the Supreme Court has made it clear that the Comptroller's interpretation of the NBA is entitled to great weight. 907 F.2d at 777 (citing Clarke v. Securities Indus. Ass'n, 479 U.S. 388 (1987)). See also Smiley v. Citibank (South Dakota), N.A., 116 S. Ct. 1730, 1733 (1996); Independent Bankers Ass'n of America v. Clarke, 917 F.2d 1126, 1128 (8th Cir. 1990). The OCC has ruled that "[a] national bank may perform, provide, or deliver through electronic means and facilities any activity, function, product, or service that it is otherwise authorized to perform, provide, or deliver." See 12 C.F.R. § 7.1019 (1998); see also OCC Interpretative Letter No. 821, 1998 LEXIS 15 at *10 (Feb. 17, 1998) (stating that section 36 preempts state geographic restrictions of ATMs). We conclude that the

OCC's interpretation is a reasonable one. See Clarke, 917 F.2d at 1129 (finding that practical realities supported an OCC conclusion that the term "State Banks" be given a functional definition).

Given the clear language of the 1996 amendment, its legislative history and the judicial decisions that formed the backdrop against which it was adopted, and the interpretation of the regulatory body charged with the responsibility of administering the national banking laws, we conclude that Bank One's ATMs are not subject to the restrictions contained in Iowa Code § 527.4(1).

Bank One also challenges that provision of Iowa law which states that ATMs "shall not be used to advertise individual financial institutions or a group of financial institutions." Iowa Code § 527.5(5). Assuming that this section has any validity as against a national bank ATM in light of our holding with respect to section 527.4(1), we conclude that it is preempted by the NBA. In Franklin National Bank v. New York, 347 U.S. 373 (1954), the Supreme Court held that a state law prohibiting national banks from using the word "saving" or "savings" was preempted by the NBA. In so holding, the Court noted that "[m]odern competition for business finds advertising one of the most usual and useful of weapons. We cannot believe that the incidental powers granted to national banks should be construed so narrowly as to preclude the use of advertising in any branch of their authorized business." Id. at 377 (referring to the incidental powers granted in 12 U.S.C. § 24 (Seventh)). In light of Franklin, we conclude that the State's attempt to regulate the advertisements on Bank One's ATMs is preempted. See Barnett Bank, 116 S. Ct. at 1108 (stating that grants of incidental powers to national banks normally preempt contrary state law).

Moreover, the OCC considered a similar Colorado EFTA provision requiring banks to remove their names from ATMs or to place the names of all other banks whose customers may use the machines. It declared in an interpretative letter that these regulations created a "significant burden on a national bank's right to engage in the

business of banking by means of an ATM, as authorized by the [NBA]." OCC Interpretative Letter No. 789 [1997 Transfer Binder] Fed. Banking L. Rep. (CCH) ¶ 81-216 at 90,244 (June 27, 1997) (citing 12 U.S.C. § 24 (Seventh)). Once again giving deference to the OCC's interpretation of the national banking laws, we conclude that this provision of Iowa law must be held invalid as against national bank ATMs.

The State argues that the federal Electronic Funds Transfer Act, 15 U.S.C. §§ 1693-1693r permits the states to regulate the electronic transfer of funds. The federal EFTA was enacted in 1978 "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). The primary objective of the federal EFTA "is the provision of individual consumer rights." Id. To achieve that goal, the act allows the states to retain control over electronic transfers:

> This subchapter does not annul, alter, or affect the laws of any State relating to electronic funds transfers, except to the extent that those laws are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency. A State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection afforded by this subchapter.

15 U.S.C. § 1693q. Despite the State's claims, this anti-preemption provision is specifically limited to the provisions of the federal EFTA, and nothing therein grants the states any additional authority to regulate national banks. State regulation of national banks is proper where "doing so does not prevent or significantly interfere with the national bank's exercise of its powers." Barnett Bank, 116 S. Ct. at 1109. Congress has made clear in the NBA its intent that ATMs are not to be subject to state regulation, and thus the provisions of the Iowa EFTA that would prevent or significantly interfere with Bank One's placement and operation of its ATMs must be held to be preempted.

## B.

To be entitled to the grant of an injunction, Bank One must establish the existence of irreparable harm. We conclude that it has done so, for in the absence of an injunction the continued enforcement of the relevant provisions of the Iowa EFT would result in irreparable economic loss to Bank One. Accordingly, Bank One is entitled to the entry of a permanent injunction enjoining the enforcement of those provisions.

In view of our holding on the preemption issue, we need not reach Bank One's remaining challenges to the Iowa statutes.

The district court's order is reversed, and the case is remanded for the entry of a permanent injunction.

BRIGHT, Circuit Judge, dissenting.

The court today reverses the district court and orders it to enjoin the State from enforcing Iowa Code Chapter 527, in its entirety, against Bank One -- or against any other national bank for that matter. The court does so because it concludes that, following Congress's 1996 changes to the statutory definition of "branch," as found in 12 U.S.C. § 36(j), Automated Teller Machines ("ATMs") are exempt from geographical branching requirements based in state law. While it is true that such requirements no longer pertain to ATMs,[2] I cannot agree that this exemption controls the disposition of the case before us. Even if a national bank's ATMs need not comply with state law geographic restrictions, that does not mean other relevant and

---

[2]State law geographic restrictions are still incumbent upon national bank entities which meet the statutory definition of a "branch" because these state law restrictions, enforced by the Comptroller, are incorporated by reference in 12 U.S.C. § 36(c).

permissible state law restrictions are preempted thereby. Many of the sections of Iowa law at issue here are simply not geographical restrictions and ought not be analyzed as though they were.

In my view, those statutory restrictions imposed under Chapter 527 which are valid, evenhanded consumer protections are not preempted by federal law. Thus, I believe that the Superintendent is entitled to enforce them against banks, both state and national alike. I therefore respectfully dissent.

Iowa Code, Chapter 527, titled Electronic Transfer of Funds, has a number of subsections. Many of these subsections are simply not geographical branching restrictions. For example, § 527(5) indicates that, "[An ATM] terminal shall bear a sign or label no larger than three inches by two inches identifying the name, address, and telephone number of the owner." Thus, by its terms, this sub-section is a straightforward consumer protection measure. The need for such measures should be obvious. As any contemporary user of ATMs is bound to attest, this technology, convenient though it is, is fraught with danger, and anecdotal evidence suggests that errors are not an infrequent occurrence. Among other possible malfunctions, bank notes may be dispensed improperly, deposits may be incorrectly recorded, and terminals may simply "eat" a customer's ATM card, refusing to return it for reasons unknown. When such problems occur, customers deserve the information necessary to correct them. But if ATMs are unmarked, consumers are seriously hindered in any attempt to rectify even glaring errors. Section 527(5) is nothing more than a rational attempt to address this problem and guarantee that aggrieved ATM users have recourse to the machine's owners.

Protection of the consumer is well within the power of States to render and is not preempted by federal law. In the recent case of <u>Barnett Bank of Marion County, N.A. v. Nelson</u>, 517 U.S. 25 (1996), the Supreme Court had reason to consider the contours of preemption in the context of federal banking law. There the Court noted that, "[i]n

defining the pre-emptive scope of statutes and regulations granting a power to national banks . . . normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted." Id. at 33. The Court went on to add, however, that "[t]o say this is not to deprive States of the power to regulate national banks, where (unlike here) doing so does not prevent or significantly interfere with the national bank's exercise of its powers." Id. (parenthetical in original) (emphasis added). Thus, when a State attempts to regulate the activities of a national bank within its jurisdiction, the State's laws are not preempted if they create no significant interference with the national bank's exercise of its due powers.

A subsection of Chapter 527, such as § 527(5), which does no more than protect innocent Iowans through the imposition of a de minimus labeling requirement creates no significant interference with any legitimate power vested in national banks, explicit or otherwise. Thus, in my view, these subsections are simply not preempted.

Moreover, it is important to note that the statute before us applies with equal force against both state and national banks. Every bank is required to comply and no advantage is gained by state chartered institutions in the process. This latter point is critically important because the questions raised by consumerism might warrant a different analysis if Iowa's statute were constructed so as to favor state banks, giving them an advantage over their national bank counterparts in the ongoing competition for borrowers, deposits, and fees. After all, the National Bank Act ("NBA") has been repeatedly interpreted to prevent such competitive imbalances and to insure that national banks are allowed to compete on an even footing with state banks. See First Nat'l Bank of Logan, Utah v. Walker Bank & Trust Co., 385 U.S. 252, 261 (1966) ("Congress intended to place national and state banks on a basis of 'competitive equality' . . . ."); First Nat'l Bank in Plant City, Florida v. Dickinson, 396 U.S. 122, 131 (1969) (The NBA "respond[s] to the competitive tensions inherent in a dual banking structure . . . [and] reflects the congressional concern that neither system have advantages over the other . . . .").

Ironically, the court's conclusion in this case is at odds with this important principle of competitive equality. State chartered banks remain bound by Iowa's consumer protection laws. To the extent that the court's decision today means that national banks are given a free pass, national banks thereby achieve a distinct and favored position under the law. Competitive equality this is not.

The laws of Iowa relating to ATM banking, and granting protection to Iowa residents and others using such services, should be enforced. I do not here attempt to delineate whether some other restriction in the Iowa Code are not applicable to national banks. Those issues may be revisited on further litigation in this case. Unfortunately, the majority has given the defendant, Iowa's Superintendent of Banking, no opportunity to focus on the consumer protection aspects of Iowa law. The majority not only reverses the denial of a preliminary injunction but, sua sponte, remands for the entry of a permanent injunction. Such action was not requested by the plaintiff, Bank One, and is unwarranted, at least until the issues raised by this case are fully litigated. I would uphold the district court's order retaining the status quo by denying the preliminary injunction and remanding the case to the district court for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.