**Gladys GARCIA–RUBIERA,**
**et al., Plaintiffs,**

v.

**Juan FLORES–GALARZA,**
**et al., Defendants.**

**Civil No. 02–1179(GAG).**

United States District Court,
D. Puerto Rico.

Aug. 30, 2007.

Antonio J. Amadeo–Murga, A.J. Amadeo Murga Law Office, San Juan, PR, for Plaintiffs.

Gerardo A. De–Jesus–Annoni, Quinones, Sanchez & Guzman, PSC, Iris Alicia Martinez–Juarbe, Department of Justice, San Juan, PR, for Defendants.

## OPINION AND ORDER

GUSTAVO A. GELPÍ, District Judge.

Plaintiffs, registered motor vehicle owners in the Commonwealth of Puerto Rico, filed this peculiar action pursuant to 42 U.S.C. § 1983. They allege that the Commonwealth's Governor and Secretary of the Treasury ("the Secretary")[1] violated the United States Constitution's Takings and Procedural Due Process Clauses by accepting the transfer of certain insurance premiums generated by the Commonwealth's compulsory motor vehicle insurance law. The Secretary and Governor acted pursuant to Act No. 230 of September 21, 2002 ("Law 230") and Act No. 414

of September 22, 2004 ("Law 414"), both codified at P.R. Laws Ann. tit. 26, § 8055(l).[2]

Presently before the court are the Secretary's Motion to Dismiss (Docket No. 98),[3] Former Governor Sila M. Calderón's ("Calderón") Motion to Dismiss (Docket No. 108),[4] Plaintiffs' Motion for Preliminary Injunction (Docket No. 102), and Plaintiffs' Motion for Class Certification (Docket No. 101). Plaintiffs seek a preliminary injunction to prevent the Commonwealth from obtaining title to funds affected by Laws 230 and 414. The defendants did not respond to Plaintiffs' preliminary injunction motion, apparently relying upon the arguments asserted in their motions to dismiss.

In their pleadings, Plaintiffs fail to state any of their legal theories with precision. Likewise, the Secretary frequently discusses relevant law but fails to provide citations to legal authority or any application of law to the facts of this case, or both. The parties' failures have unnecessarily complicated the court's task of deciding the pending motions which are inherently complicated to begin with. Notwithstanding, the court has fully considered the pending motions and rules as follows: the Secretary's Motion to Dismiss (Docket No. 98) is **DENIED IN PART** and **GRANTED IN PART,** Calderón's Motion to Dismiss (Docket No. 108) is **GRANTED,** Plaintiffs'

---

1. Plaintiffs include the current Governor and Secretary of the Treasury as official capacity defendants. Former Governor Sila M. Calderón and former Secretary of the Treasury Juan A. Flores Galarza are personal capacity defendants.

2. The statement of motives and final text of each law is available on Lexis Nexis and the case docket. *See* 2002 P.R. Laws 230 & Docket No. 104-4 (Law 230); 2004 P.R. Ley 414 & Docket No. 39-2 (Law 414).

3. The Secretary's motion to dismiss incorporates the arguments asserted in an earlier motion to dismiss, *see* Docket No. 83, which the court denied without prejudice, *see* Docket No. 88. Additionally, the Secretary twice supplemented his motion to dismiss. *See* Docket Nos. 99, 107.

4. Calderón moved for dismissal at the June 25, 2007 status conference. *See* Docket No. 108. Plaintiffs' responded to the motion on June 26, 2007. *See* Docket No. 109.

Motion for Preliminary Injunction (Docket No. 102) is **DENIED IN PART** and **GRANTED IN PART,** and Plaintiffs' Motion for Class Certification (Docket No. 101) is **DENIED.**

## I. Factual Background

Under the Commonwealth of Puerto Rico's Compulsory Motor Vehicle Liability Insurance Act, Act No. 253, as amended ("Law 253"), codified at P.R. Laws Ann. tit. 26, §§ 8051–8061, liability insurance coverage is required for all motor vehicles that travel on public thoroughfares. *Asociación de Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza,* 484 F.3d 1, 6 (1st Cir.2007) (hereinafter *"Flores Galarza"*). Every vehicle owner in Puerto Rico must either: (1) pay the premium for compulsory liability insurance to the Secretary at the time she acquires or renews a vehicle registration; or (2) opt-out of the compulsory liability insurance scheme by privately purchasing liability insurance with comparable or better coverage. Notwithstanding the opt-out option, many vehicle owners who obtain private insurance also pay the compulsory insurance premium. *Id.* at 7.

The Secretary periodically forwards to the Compulsory Liability Joint Underwriting Association of Puerto Rico ("JUA") all compulsory insurance liability premiums received. JUA holds the transferred premiums in a separate account called "the Reserve." *Id.* at 8. The Reserve is made up of two separate categories of funds: (1) Duplicate Premiums—funds which JUA uses to reimburse duplicate payments to vehicle owners who bought insurance from a private insurer but also paid the compulsory liability premium;[5] and (2) the Overstated Reserve—overstated funds consisting of the cushion JUA set aside to ensure that the Reserve contains sufficient funds to meet all the requests for reimbursement—funds that, as it turned out, JUA did not need for reimbursement. *Id.* Vehicle owners who obtain private insurance and also pay the compulsory insurance premium may request reimbursement of the compulsory premium directly from JUA or from their insurer. *Id.* at 7.

In order to remedy the Commonwealth's cash flow problems, the Puerto Rico legislature enacted Law 230. The same requires JUA to periodically transfer to the Secretary all funds held in the Reserve. The first transfer occurred in September 2002 when JUA transferred $73 million.[6] Law 230 mandates that JUA continue providing such funds every two years thereafter. *Id.* at 9–10. Law 230 permitted the Commonwealth to immediately begin spending $53 million corresponding to the Overstated Reserve;[7] these funds immedi-

---

**5.** JUA also uses a portion of the Duplicate Premiums to reimburse private insurers who have reimbursed their insureds for payment of the compulsory premium. *Flores Galarza,* 484 F.3d at 8.

**6.** JUA did not, in fact, *transfer* any funds to the Secretary in September 2002. Beginning in 2002, the Secretary stopped adhering to Law 253's requirement that he transfer compulsory liability premiums to JUA. JUA challenged the withholding in Commonwealth court. The parties reached a settlement in the Commonwealth case in November 2002. Pursuant to the settlement, the Secretary

transferred the withheld funds. The Secretary retained approximately $73 million, corresponding to the amount Law 230 required JUA to turn over to the Secretary. *See Flores Galarza,* 484 F.3d at 9–10. For simplicity purposes, the court refers to this retention by the Secretary as a transfer from JUA to the Secretary.

**7.** The First Circuit identified the amount of funds in the Overstated Reserve at somewhere between $8 million and $10 million. *See Flores Galarza,* 484 F.3d at 8, 11 n. 13. According to the Law 414 Statement of Motives, the Commonwealth estimated the Overstated

ately passed to the General Fund of the Commonwealth. *Id.* at 10; *see also* 2004 P.R. Ley 414. Under Law 230, the Secretary holds the Duplicate Premiums as trustee for a period of five years during which time motor vehicle owners may seek reimbursement from the Secretary. After five years, the Duplicate Premiums become the property of the Commonwealth and pass to the General Fund. Any income generated by the funds, such as interest, reverts to the Commonwealth's General Fund as it accrues. P.R. Laws Ann. tit. 26, § 8055(*l*).

Pursuant to Law 230, the Secretary adopted a procedure, known as Procedure No. 96, through which motor vehicle owners may seek reimbursement. Docket No. 104, ¶ 31 & Exh. IV. In the two years that followed the enactment of Law 230, a small number of motor vehicle owners effectively utilized the procedure. The Secretary reimbursed approximately $500,000 of the Duplicate Premiums owed. *See* 2004 P.R. Ley 414.

Law 414, which further amended Law 253, permitted the Commonwealth to use $19 million of the remaining funds transferred by JUA in September 2002 to balance the 2004–2005 fiscal year budget. P.R. Laws Ann. tit. 26, § 8055(*l*); *see also* 2004 P.R. Ley 414. Law 414 requires that the Commonwealth shall use money from the General Fund and the Budgetary Fund to reimburse motor vehicle owners if the amount JUA transfers every two years is not sufficient to satisfy timely reimbursement requests. P.R. Laws Ann. tit.

26, § 8055(*l*). Therefore, it appears that the trust continues for practical purposes even after the Secretary has transferred the money to the General Fund. *See Taylor v. Westly,* 402 F.3d 924, 931 (9th Cir. 2005) (hereinafter *Taylor I* ) ("[State's] obligation to order transfer from the Treasurer, if money was deposited in the general fund but is subsequently found not to be permanently escheated, plainly establishes that the trust continues, even after the Controller has transferred the money to the general fund.").

To summarize the law after the passage of Laws 230 and 414, motor vehicle owners who obtain private insurance and also pay the compulsory insurance may seek reimbursement of the double premium. During the first two years after the double payment, motor vehicle owners may seek reimbursement from their insurers or from JUA. Following the first two years, motor vehicle owners have five years during which they may seek reimbursement from the Commonwealth.[8] If the Secretary's trust account does not have sufficient funds to satisfy timely requests for reimbursement, the Secretary must use funds from the General Fund and the Budgetary Fund to reimburse double premiums. One aspect of the law remains unchanged by Laws 230 and 414: all funds not claimed within seven years of initial payment become the property of the Commonwealth.

Plaintiffs are motor vehicle owners who purchased private liability insurance but also paid the compulsory insurance premi-

---

Reserve to be much higher; the Commonwealth concluded that $53 million of the $73 million corresponded to excess reserve funds. *See* 2004 P.R. Ley 414. Neither party offers an explanation for, nor does the court endeavor to explain, this discrepancy.

8. The First Circuit recognized that Law 230 divides "the seven-year period provided by

the general provisions of Puerto Rico's Insurance Code, P.R. Laws Ann. tit. 26, § 2603, among the JUA (which holds the funds for two years) and the Secretary (who holds the funds for five additional years), after which time the funds lapse to the [G]eneral [F]und...." *Flores Galarza,* 484 F.3d at 10 n. 9.

um. In 2001, they sought reimbursement from their private liability insurance providers and JUA through a complaint filed in Commonwealth Court of First Instance.[9] None of Plaintiffs has requested reimbursement from the Secretary through Procedure No. 96. In September 2007, the Commonwealth will obtain title to some of the funds Plaintiffs seek to recover.

Plaintiffs assert a property interest in the Duplicate Premiums and the interest they generate. They allege that each transfer of the Reserve from JUA, starting with the $73 million in September 2002 and occurring ever two years thereafter, constitutes a temporary physical appropriation of their private property without compensation and without due process of law in violation of the Fifth and Fourteenth Amendments.[10] Additionally, Plaintiffs allege that the Secretary permanently appropriated the interest generated by the temporarily taken funds. They seek a preliminary injunction enjoining the Secretary from enforcing the terms of allegedly unconstitutional Laws 230 and 414; more specifically, Plaintiffs seek to prevent the Commonwealth from taking title to any funds transferred pursuant to these laws. If the preliminary injunction issues, the Secretary would continue to hold the funds in only a fiduciary and custodial capacity until the court can address the merits of Plaintiffs' claims. Plaintiffs ultimately aspire to obtain the following relief: a declaratory judgment that Laws 230 and 414 are unconstitutional; injunctive relief preventing further transfers of the Reserve from JUA to the Secretary; reimbursement of the duplicate premiums with interest; and $70 million in damages from the Secretary and the Governor, in their personal capacities.

## II. The Secretary's Motion to Dismiss

The Secretary requests dismissal of Plaintiffs' claims for the following reasons: (1) Plaintiffs' failure to request reimbursement from the Secretary deprives this court of subject-matter jurisdiction; (2) the court should employ either *Pullman* abstention or certification to dispose of the underlying state law issue before ruling on federal issues; (3) the Eleventh Amendment bars Plaintiffs' suit against the Secretary in his official capacity; (4) Section 1983 is not available as a remedy for the kind of violation of a federally protected right invoked by Plaintiffs; and (5) the Secretary is entitled to qualified immunity on the damages claims against him in his personal capacity.

### A. Subject-matter Jurisdiction

 The court rejects the Secretary's blanket contention that the court lacks subject-matter jurisdiction over all of Plaintiffs' claims. The Secretary argues

---

9. Before the enactment of Laws 230 and 414, motor vehicle owners filed a class action in local court against JUA and several private insurance providers. According to Plaintiffs' counsel, who also represents the plaintiffs in the Commonwealth action, the Court of First Instance dismissed the case due to failure to exhaust administrative remedies. Similar to Plaintiffs in the instant action, the plaintiffs in the Commonwealth action never sought reimbursement from the Secretary. The case is currently on appeal. *See* Docket No. 110, p. 9.

10. Plaintiffs also contend that Law 230 violates the federal separation of powers doctrine. The invoked doctrine has no applicability to the facts of this case. The relevant doctrine, which Plaintiffs do not discuss, would be the Commonwealth's separation of powers doctrine. The court also finds without merit Plaintiffs' undeveloped arguments that the Secretary's action constitutes an unconstitutional retroactive application of a statute and violates their rights to equal protection.

that the court lacks subject-matter jurisdiction because Plaintiffs seek federal judicial remedies without having sought available state administrative remedies. He cites no legal authority to support his argument. A review of the relevant case law reveals that exhaustion of state administrative remedies is not a jurisdictional prerequisite to Plaintiffs' Section 1983 claim. It is well-settled law that a plaintiff is not required to exhaust administrative remedies prior to bringing a Section 1983 action. *Jones v. Bock,* —— U.S. ——, 127 S.Ct. 910, 919, 166 L.Ed.2d 798 (2007); *Patsy v. Fla. Bd. of Regents,* 457 U.S. 496, 500, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Gibson v. Berryhill,* 411 U.S. 564, 574–75, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *McNeese v. Bd. of Educ.,* 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Borges Colon v. Roman–Abreu,* 438 F.3d 1, 19 (1st Cir.2006); *see also Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ("The federal remedy is supplementary to the State remedy, and the latter need not first be sought and refused before the federal one is invoked.").

■ The Supreme Court of the United States, however, has adopted a set of ripeness requirements specifically applicable to Takings Clause actions against local governments. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). A takings plaintiff must show that she received a final decision from state on use of her property and sought compensation through state procedures provided for do-

ing so. Failure to satisfy *Williamson County*'s ripeness requirements precludes federal court subject-matter jurisdiction over a takings claim against a state entity. *Flores Galarza,* 484 F.3d at 14; *Pascoag Reservoir & Dam LLC v. Rhode Island,* 337 F.3d 87, 91–92 (1st Cir.2003).

■ The *Williamson County* requirements are not fully applicable to the type of taking Plaintiffs allege. *Flores Galarza,* 484 F.3d at 15. Plaintiffs allege a physical taking which is, by definition, a final decision for purposes of satisfying *Williamson County*'s "finality" requirement. *See id.*; *see also Pascoag Reservoir,* 337 F.3d at 91–92 (noting only "just compensation" prong applies to claim involving physical appropriation). Thus, only the just compensation prong potentially bars Plaintiffs' takings claim.

■ The central inquiry regarding the just compensation prong is whether the state makes available a process "that is particularly aimed at providing compensation when government action effects a taking." *Flores Galarza,* 484 F.3d at 16. The First Circuit has held that such procedures do not include litigation of a state takings claim or any general state law remedial cause of action. *Id.* at 17. In this case, the Commonwealth provides Procedure No. 96, a particularized process aimed at providing motor vehicle owners an avenue through which to obtain compensation of the Duplicate Premiums.[11] Every dollar each Plaintiff paid generates one dollar of compensation. Moreover, Plaintiffs have not demonstrated the inadequacy of this compensatory procedure.[12]

---

**11.** The Commonwealth provided no similar procedure with respect to the takings alleged by JUA in *Flores Galarza.* *Flores Galarza,* 484 F.3d at 19.

**12.** The *Williamson County* court identified two exceptions to the "just compensation"

requirement—where state remedies are "unavailable" or "inadequate." Other court have also recognized an exception where state remedies are "futile." *See Pascoag Reservoir,* 337 F.3d at 92. Plaintiffs cannot show that Procedure No. 96 was inadequate, unavailable, or futile.

They simply have elected not to avail themselves of Procedure No. 96 and have not provided any compelling justification for their choice. Plaintiffs have not alleged or submitted evidence, such as a declaration, to the effect that they unsuccessfully attempted to use Procedure No. 96.[13] Other than mere conjecture, they offer no evidence that the procedure was unreasonable or unduly burdensome. In light of Plaintiffs' un-excused failure to utilize Procedure No. 96, they do not satisfy *Williamson County*'s requirements. Plaintiffs' claim related to the taking of the Duplicate Premiums is not ripe. If Plaintiffs fail to timely pursue state remedies under Procedure No. 96, they will forfeit their federal takings claim. *See Pascoag Reservoir*, 337 F.3d at 94–95.

■ Conversely, the Commonwealth provides no procedure aimed at providing compensation for the taking of the interest the Duplicate Premiums generate. Plaintiffs' interest-related claim, therefore, is not barred by the *Williamson County* prudential factors. The claim is ripe for judicial review.

In light of the foregoing, the court concludes that is has subject-matter jurisdiction over Plaintiffs' procedural due process claim and Plaintiffs' takings claim pertaining to the interest generated by the Duplicate Premiums. The court, however, lacks subject-matter jurisdiction to adjudicate Plaintiffs' takings claim regarding the biennial transfer of the Duplicate Premiums.

## B. *Pullman* Abstention and Certification

■ Under both *Pullman* abstention and certification, a court must not under-take to resolve the issues in the case if the state law is patently unclear. *Ford Motor Co. v. Meredith Motor Co., Inc.*, 257 F.3d 67, 71 (1st Cir.2001); *Med. Prof'l Mut. Ins. Co. v. Breon Labs., Inc.*, 141 F.3d 372, 376–77 (1st Cir.1998). This case simply does not involve uncertain state law issues. Laws 230 and 414 clearly recognize a motor vehicle owner's entitlement to a portion of the Duplicate Premiums if she double pays. Both laws explicitly address the motor vehicle owner's right to reimbursement. Consequently, neither *Pullman* abstention nor certification is appropriate.

## C. Eleventh Amendment Immunity

■ The Eleventh Amendment does not bar Plaintiffs' claims for prospective declaratory and injunctive relief against the Secretary in his official capacity. *See Ex parte Young*, 209 U.S. 123, 155, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Flores Galarza*, 484 F.3d at 24–25. Plaintiffs allege an ongoing violation of federal law and seek relief properly characterized as prospective. *See Verizon Md. Inc. v. Pub. Serv. Comm. of Md.*, 535 U.S. 635, 644, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (discussing nature of relief allowed under *Ex parte Young* exception to Eleventh Amendment immunity). Specifically, Plaintiffs seek an injunction prohibiting any further implementation of Laws 230 and 414 and a declaratory judgment to the effect that any further transfer of funds under Laws 230 and 414 constitutes a taking of property without due process and without just compensation. To the extent Plaintiffs' seek the specific remedy of return of their unconstitutionally taken property held in a custodial trust by the Com-

---

13. The party asserting subject-matter jurisdiction bears the burden of demonstrating its existence. *Skwira v. United States*, 344 F.3d 64, 71 (1st Cir.2003). The court is not bound by allegations in the complaint when deter-mining whether it is vested with jurisdiction to hear a case. It may look beyond the pleadings in order to evaluate jurisdiction. *See Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362–63 (1st Cir.2001).

monwealth, such relief is equitable and not barred by the Eleventh Amendment.[14] *See Suever v. Connell,* 439 F.3d 1142, 1146 (9th Cir.2006); *Taylor I,* 402 F.3d at 931–35.

### D. Availability of Section 1983

The Secretary next argues that Section 1983 is not available as a remedy for violation of the federally protected rights invoked by Plaintiffs. His discussion on this issue is far from precise. Notwithstanding, the court has done its best to address to the Secretary's arguments.

First, the Secretary states that Plaintiffs cannot pursue an action directly under the Constitution because relief is available under Section 1983. In this case, Plaintiffs seeks redress under Section 1983, not directly under the Constitution. The Secretary's argument, therefore, is inapposite.

 Second, the Secretary argues that Section 1983 is not available to enforce a violation of the Takings Clause or the Due Process Clause. This discussion illustrates the Secretary's frequent failure to provide any application of legal principles to the facts of this case. He cites case law pertaining to the foreclosure of Section 1983 by express mandate of the United States Congress. He provides no explanation regarding how those cases relate to Plaintiffs' claims. An investigation into the relevant case law makes clear that the availability of a state remedial scheme does not ordinarily supplant Section 1983; it does not foreclose resort to a Section 1983 suit to redress violations of federally

protected rights. *See Wright v. Roanok Redev. and Hous. Auth.,* 479 U.S. 418, 427–28, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Patsy,* 457 U.S. at 516, 102 S.Ct. 2557; *Langlois v. Abington Hous. Auth.,* 234 F.Supp.2d 33, 48 (D.Mass.2002) (quoting *Blessing v. Freestone,* 520 U.S. 329, 346, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)) ("[T]he administrative scheme must be both *federal* and 'sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under Section 1983.'") (emphasis added). In this case, whether the state provides an adequate remedy for the alleged constitutional deprivations pertains to the merits of Plaintiffs' remaining claims. Plaintiffs allege that the state remedy provided, Procedure No. 96, is inadequate. Accepting Plaintiffs' allegations as true, as it must, the court cannot dismiss Plaintiffs' claims solely based on the existence of a state remedy.

### E. Qualified Immunity

 Regarding the Secretary's entitlement to qualified immunity, the First Circuit's recent decision in *Flores Galarza* dictates a result in the Secretary's favor in this case. Qualified immunity shields public officials performing discretionary functions from civil damages, including those available under Section 1983, so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would be aware. *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396

---

**14.** The court acknowledges that, pursuant to Law 414, the Secretary transferred $19 million of the Duplicate Premiums from the trust account to the General Fund. *See* P.R. Laws Ann. tit. 26, § 8055(*l*). Notwithstanding, the law explicitly requires the Secretary to use funds from the General Fund or the Budgetary Fund to satisfy timely reimbursement requests if the trust account does not contain

sufficient funds. *Id.* Therefore, it appears that the trust continues even after the Secretary has transferred the money to the General Fund. The fact that the Secretary transferred the $19 million to the General Fund does not bar Plaintiffs' claims seeking the specific remedy of return of their property. *See Taylor,* 402 F.3d at 931.

(1982). The First Circuit employs a three-step test to determine whether qualified immunity shields a government official. The court must make the following inquiries in assessing the applicability of the qualified immunity defense:

> (i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.

*Rodriguez v. Beninato,* 469 F.3d 1, 4 (1st Cir.2006); *see also Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir.2004). When there is no dispute regarding the underlying material facts, the court determines a defendant's entitlement to qualified immunity as a matter of law. *See Sheehy v. Town of Plymouth,* 191 F.3d 15, 19 (1st Cir.1999).

### 1. Whether Plaintiffs' Allege a Deprivation of Constitutional Right

■ The court has determined that Plaintiffs' takings claim related to the Duplicate Premiums is not ripe. Consequently, the court addresses only the sufficiency of Plaintiffs' procedural due process and interest-related takings allegations. As the qualified immunity issue is before the court in the context of a motion to dismiss,

the court must ask whether the facts alleged, viewed in the light most favorable to Plaintiffs, show that the defendant's conduct violated some constitutional right. *Flores Galarza,* 484 F.3d at 27; *Limone v. Condon,* 372 F.3d 39, 44 (1st Cir.2004).

■ As a necessary precondition to Plaintiffs' takings and procedural due process claims, Plaintiffs must allege a constitutionally protected property right to the disputed funds.[15] In this case, Plaintiffs assert an entitlement to, and therefore a property right in, the Duplicate Premiums and the interest they generate. The recent *Flores Galarza* decision validates Plaintiffs' asserted property right in the Duplicate Premiums and the interest.

In *Flores Galarza,* the Secretary argued that the Duplicate Premiums "'constitute a double payment for the same insurance,'" and, therefore, do not belong to the JUA, but rather belong to private insured motorists ... who are entitled to reimbursement." *Flores Galarza,* 484 F.3d at 30. The First Circuit agreed with the Secretary that the Duplicate Premiums belong to motor vehicle owners and not to JUA.[16] Conversely, the First Circuit court affirmed JUA's property right in other compulsory insurance-related funds retained by the Secretary. *See id.* at 29–32. Its determination that JUA alleges a property right in certain funds, the First Circuit reasoned, compels the same conclusion

---

**15.** The Takings Clause provides that "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V. No unconstitutional taking occurs until the government has denied the property owner just compensation. *See Williamson County,* 473 U.S. at 194 n. 13, 105 S.Ct. 3108; *Gilbert v. City of Cambridge,* 932 F.2d 51, 63–65 (1st Cir.1991). The root requirement of the Due Process Clause is that an individual be given notice and an opportunity to be heard before the final deprivation of any significant property interest. *See Cleveland Bd.*

*of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

**16.** As stated by the First Circuit, "the law in effect at the time the premiums were withheld ... obliged [JUA] to return the Duplicate Premiums to those requesting reimbursement. JUA is a custodian of the Duplicate Premiums for the benefit of either those entitled to reimbursement or, if the premiums go unclaimed [within the requisite seven years], the Commonwealth." *Flores Galarza,* 484 F.3d at 30.

with respect to the interest generated by those funds. *See id.* at 32. The First Circuit based its conclusion on "the common law rule that 'interest follows principal.'" *Id.* (quoting *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 165–72, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998)); *see also Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). Finally, the First Circuit recognized that JUA does not possess a property right in interest generated by the Duplicate Premiums. *Flores Galarza*, 484 F.3d at 32 n. 31.

▉ In light of the *Flores Galarza* decision, the court concludes that Plaintiffs have successfully alleged a property right in the Duplicate Premiums transferred by JUA to the Secretary and in the interest generated by those funds. Additionally, Plaintiffs' complaint sufficiently alleges that the Secretary physically appropriated the Duplicate Premiums without due process and the interest without just compensation or due process.[17] Plaintiffs also allege that any state remedy provided was inadequate, that the alleged deprivation was committed under color of state law, and that they suffered damages. Such allegations are sufficient to support Plaintiffs' Section 1983 suit anchored on either a takings or procedural due process claim.

## 2. Whether Constitutional Right was Clearly Established

▉ The second stage in the qualified immunity requires the court to ask whether the law was clearly established at the time of the constitutional violation. With

respect to Plaintiffs' takings claims, the relevant law was not clearly established until, at the earliest, the First Circuit issued the *Flores Galarza* decision on March 1, 2007. Notably, the First Circuit recognized that:

> "after enactment of [Law 230], which specifically required the JUA to transfer to the Secretary all funds held in the Reserve as of December 31, 2001, the law did not clearly establish that JUA had a property right in the $10 million of Overstated Reserve Funds or, indeed, that *withholding any of the designated Reserve ...* [and the interest it generates] was an unconstitutional taking."

*Flores Galarza*, 484 F.3d at 35 (emphasis added). The court reiterated this point when it stated, "the law was not clearly established that [the Secretary] effected an unconstitutional taking of the withheld insurance premiums, the interest generated by those premiums, or the Overstated Reserve Funds." *Id.* at 37. Because the law was not clearly established at the time the Secretary allegedly deprived Plaintiffs of their rights guaranteed by the Takings Clause, he is entitled to qualified immunity on all of their takings claims. Plaintiffs' have not demonstrated that the unlawfulness of the Secretary's taking of the Duplicate Premiums and the interest they generate, pursuant to statute, was apparent.

Regarding Plaintiffs' procedural due process claim, the law was not clearly established that to the effect that the custodial transfer of funds pursuant to a Commonwealth statute and the provision of a

---

17. In *Flores Galarza,* the First Circuit held that the temporary retention or delay and the appropriation of funds in a custodial capacity still constitutes a taking. *See Flores Galarza,* 484 F.3d at 29–30. *But see Taylor,* 402 F.3d at 936 (reiterating prior holding that property not taken when merely held in trust by state for owner); *In re Folding Carton Antitrust*

*Litig.,* 744 F.2d 1252, 1255 (7th Cir.1984) (holding no unconstitutional taking occurs where state exercises custody and control over property rather than taking absolute title). Consequently, the fact that the Secretary initially took the Duplicate Premiums only in a fiduciary capacity is not fatal to Plaintiffs' takings claim.

compensation procedure did not comport with due process requirements. At the time the Secretary accepted the Reserve transfer from JUA, it was not clearly established that the purely custodial transfer triggered due process concerns. That the transfer constituted an interference with Plaintiffs' property rights, therefore, was not clearly established.

In the light of the foregoing, the court holds that Plaintiffs fail to allege a clearly established violation of law by the Secretary with respect to the Duplicate Premiums and the interest generated by those premiums.

### 3. Whether a Reasonable Officer Would Believe Action Violated Clearly Established Right

Even if the court arrives at the third step in the qualified immunity analysis, it reaches the same result—the Secretary is entitled to qualified immunity on all of Plaintiffs' damages claims. At the third step, the court must consider whether a reasonable official would have believed his actions violated a clearly established right. *Flores Galarza*, 484 F.3d at 36.

The *Flores Galarza* decision unequivocally resolves this question in the Secretary's favor. The First Circuit stated "a reasonable officer in [the Secretary's] circumstances would have believed that he had a law mandate, stemming from [Law 230], to retain for use by the Department of Treasury the Reserve Fund recognized by JUA as of December 31, 2001. Any officer in his shoes would have acted as he did in immediately retaining the full Reserve Fund [and interest] without any compensation to the JUA [or Plaintiffs]." *Id.* at 36. The same rationale applies to the takings and procedural due process claims asserted in this case. In fact, the Secretary's entitlement to qualified immunity is even stronger than in *Flores Galarza*. In compliance with Law 230, he established a procedure through which motor vehicle owners could obtain reimbursement of all duplicate premiums paid. It was objectively reasonable for the Secretary to believe that his acts, all done in accordance with his duty mandated by law, did not violate Plaintiffs' rights.

The *Flores Galarza* court held that the Secretary's reliance on Law 230 to justify his actions was not objectively unreasonable. This court adopts the First Circuit's reasoning, and therefore, grants the Secretary's motion to dismiss based on qualified immunity.

To summarize the court's rulings on the Secretary's motion to dismiss, qualified immunity forecloses all of Plaintiffs' damages claims against the Secretary. The Secretary's motion to dismiss the personal capacity claims against him is **GRANTED**. To the extent that the Secretary also seeks dismissal of Plaintiffs' official capacity claims for prospective injunctive and declaratory relief, the motion to dismiss is **DENIED**.

## II. Former Governor Calderón's Motion to Dismiss

The only claim remaining against former Governor Calderón seeks damages from her in her personal capacity. She seeks dismissal of the suit on the ground that she is protected by legislative immunity. Legislative immunity shields a governor from any suit arising out of her legislative actions, including the signing of a bill. *Torres Rivera v. Calderon Serra*, 412 F.3d 205, 212–13 (1st Cir.2005). An executive official's actions taken to enforce or implement legislation, however, are not shielded by legislative immunity. *Id.* at 214. Plaintiffs claims against Calderón in her personal capacity arise out of actions taken to implement and enforce Law 230. Consequently, legislative immunity does not

protect Calderón from Plaintiffs' damages claims.

Qualified immunity is the proper doctrine under which the court should evaluate Calderón's immunity entitlement. *Id.* The analysis of the qualified immunity defense with respect to Flores Galarza applies equally to Calderón. Qualified immunity shields Calderón from Plaintiffs' damages claims. Consequently, former Governor Calderón's motion to dismiss is **GRANTED.**

### III. Plaintiffs' Motion for Preliminary Injunction

Plaintiffs argue that each biennial transfer of the Reserve from JUA, starting with the $73 million in September 2002, constitutes a temporary physical appropriation of their private property without compensation and without due process of law in violation of the Fifth and Fourteenth Amendments. Additionally, Plaintiffs allege that the Secretary permanently appropriated the interest generated by the temporarily taken funds. The motion for preliminary injunction seeks to prevent the Commonwealth from obtaining title in September 2007 to the Duplicate Premiums transferred in September 2002. Plaintiffs contend that the Eleventh Amendment would bar Plaintiffs' action for recovery if the Commonwealth claims the funds in a proprietary capacity.

■■■ It is well established law that the court is to constantly bear in mind that an injunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case. *See Mass. Coalition of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness,* 649 F.2d 71, 76 n. 7 (1st Cir.1981); *Augusta News Co. v. News Am. Publ'g, Inc.,* 750 F.Supp. 28, 31 (D.Me.1990). The court must consider four factors when considering a motion for

preliminary injunction: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the hardship to the nonmovant if enjoined balanced against the hardship to the movant if no injunction issues; and (4) the effect, if any, granting the injunction will have on the public interest. *See Jean v. Mass. State Police,* 492 F.3d 24, 26–27 (1st Cir.2007); *Esso Std. Oil Co. v. Monroig–Zayas,* 445 F.3d 13, 18 (1st Cir. 2006). The party seeking the injunctive relief "bears the burden of establishing that these four factors weigh in its favor." *Esso,* 445 F.3d at 19.

### A. Double Premiums

■■■ Because Plaintiffs' takings claim related to the Duplicate Premiums is not ripe, there is no likelihood that they will succeed on the merits. To recap the earlier ripeness analysis, the court notes that the Secretary provides an specific avenue through which Plaintiffs may request *full* reimbursement the Double Premiums. Procedure No. 96 permits a motor vehicle to obtain reimbursement of every dollar double paid. Plaintiffs elected not to take advantage of Procedure No. 96. Plaintiffs wilfully choose to ignore the administrative procedure through which they are expected to seek compensation. *Cf. Flores Galarza,* 484 F.3d at 19 (noting Commonwealth provided JUA no administrative process through which to seek compensation). They cannot, therefore, demonstrate that the Secretary has denied them just compensation. Moreover, Plaintiffs' conclusory allegations that the procedure is inadequate cannot justify injunctive relief. They offer no evidence of any inadequacy in the procedure. Plaintiffs proffer facts, for example through a declaration, that they unsuccessfully attempted to use Procedure No. 96 or that the procedure was unreasonable or excessively burden-

some. Lack of ripeness is fatal to Plaintiffs' takings claims, and therefore to their request for injunctive relief.

Plaintiffs also fail to demonstrate a likelihood of success on an element critically important to their procedural due process claim. They have not shown that available remedies under Commonwealth law are inadequate to redress any deprivation resulting from the transfer of the Duplicate Premiums to the Secretary. *See Rumford Pharmacy, Inc. v. E. Providence,* 970 F.2d 996, 999–1000 (1st Cir. 1992) (dismissing procedural due process claim where plaintiff gave court no reason to believe state law did not provide adequate remedy). Plaintiffs have not attempted to obtain reimbursement through Procedure No. 96. They plainly could have submitted a request for reimbursement to the Secretary. This would have meant minor inconvenience to Plaintiffs. *See Herwins v. City of Revere,* 163 F.3d 15, 19–20 (1st Cir.1998) (refusing to allow plaintiff to ignore state procedural remedy to create federal case). They failed to request reimbursement, and they provide no explanation for their failure. They offer no evidence of the constitutional inadequacies of the Commonwealth law remedy. They make no evidentiary proffer to support their allegations that Procedure No. 96 is onerous and "difficult if not impossible." Docket No. 103, pp. 4–5. Consequently, there is no likelihood of success on their procedural due process claim.

The court additionally notes that Plaintiffs appear to have an adequate remedy at law which they have elected not to pursue. They will not, therefore, suffer irreparable injury if denied equitable relief. Any irreparable injury will result from their very own decision not to utilize the Commonwealth's compensatory process, of which they have been well aware of for some time.

**B. Interest**

 The analysis of Plaintiffs' claim with respect to the interest generated by the Duplicate Premiums differs drastically from the analysis regarding the Duplicate Premiums themselves. After reviewing the applicable law, the court concludes that Plaintiffs likely will succeed on their claim that they have a constitutionally protected property right in the interest.[18] Under the plain terms of Law 230, any interest generated by the Duplicate Premiums immediately becomes the property of the Commonwealth. The Secretary provides no administrative process through which Plaintiffs are expected to or can seek compensation for the appropriation of the interest. They have no opportunity to be heard regarding the deprivation of their property right. *See Loudermill,* 470 U.S. at 542, 105 S.Ct. 1487 (1985) (acknowledging opportunity to be heard before final deprivation of property right key to procedural due process). Under the existing law, Plaintiffs' property right in the interest is lost forever. Plaintiffs, therefore, have demonstrated a likelihood of success on the merits of their claim regarding the unconstitutional taking of the interest without just compensation and without due process of law.

---

18. The Secretary offers no substantive opposition to Plaintiffs' interest-related claims. He does not directly contest their property right in the interest. He does not challenge their assertions that the funds do actually generate interest while in his possession and that such interest immediately becomes Commonwealth property as it accrues. He ignores Plaintiffs' allegations that the Commonwealth provides no remedy through which they can recover the interest. Finally, he offers no reason why the Secretary's confiscation of the interest does not constitute a taking.

■ Plaintiffs have satisfied the critical element of the injunction formulation—they have demonstrated a likelihood of success on the merits. Plaintiffs also satisfy the second element; they successfully argue that they will suffer irreparable harm if the Commonwealth is not enjoined from further permanently appropriating the interest. No adequate remedy at law exists. The Commonwealth provides no administrative procedure through which Plaintiffs may recover the taken interest. Moreover, the Eleventh Amendment prohibits a money damages award against the Commonwealth, specifically because those damages would come of the Commonwealth's general fund. It is impossible for Plaintiffs to acquire the interest, thus creating irreparable harm. The likelihood of irreparable harm combined with Plaintiffs' likelihood of success on the merits justifies injunctive relief.

■ The court further notes that the third and fourth factors also point in Plaintiffs' favor. The third factor, the balancing of the equities, shows that Plaintiffs' harm would outweigh the harm to the Commonwealth precisely because the money does not belong to the Commonwealth but to Plaintiffs. Finally, the fourth factor, the public interest, merits an immediate injunction. If not enjoined, the Commonwealth could perpetuate the practice of unconstitutionally appropriating the interest. The Secretary proffers no evidence that show a potential harm to the public interest if the court issues injunctive relief.

In light of the foregoing, the court concludes that injunctive relief is appropriate.

## C. Scope of Injunctive Relief

The Secretary and the Governor, their agents, or anyone acting in concert with them or pursuant to their orders, and/or their successors in any representative capacity are hereby enjoined from depositing in the General Fund any interest generated by the Duplicate Premiums held in a custodial capacity by the Secretary. Specifically, the court hereby enjoins enforcement of the language in the Commonwealth's compulsory motor vehicle insurance law that reads, "[t]he income generated by these funds shall revert to the General Fund of the Commonwealth Treasury as they are accrued." The Commonwealth must implement a constitutionally adequate statutory or regulatory scheme to deal with the interest generated by the Duplicate Premiums.

The court declines Plaintiffs' request to enjoin the September 2007 transfer of title to Commonwealth of the portion of the funds transferred in 2002 still held in a custodial capacity.[19]

---

19. The court notes that the requested preliminary injunction would have affected an apparently small percentage of the $73 million transferred in September 2002. As best as the court can discern, the injunction would only affect approximately $500,000 in funds. The preliminary injunction would apply only to funds to which the Commonwealth will obtain title in September 2007. These funds consist of certain monies transferred by JUA in September 2002 and held in a custodial capacity by the Secretary. According to the Law 414 Statement of Motives, JUA transferred $73 million to the Secretary in September 2002. $53 million immediately passed to the General Fund. The Secretary used the $53 million to balance the 2001–2002 fiscal year budget. The Secretary held the remaining $20 million in a custodial capacity for payment of reimbursement requests. As of September 22, 2004, the Secretary had reimbursed $500,000 in response to motor vehicle owner requests. Thus, the Secretary had returned $500,000 of the $20 million set aside to satisfy reimbursement requests. See 2004 P.R. Ley 414. Pursuant to Law 414, $19 million of the set aside funds passed to the General Fund and became available to balance the 2004–2005 fiscal year budget. See 28 P.R. Laws Ann. tit. 26, § 8055(l); 2004

## IV. Plaintiffs' Motion for Class Certification

 Plaintiffs seek certification of the following class: "all motor vehicle owners [sic] residents of the Commonwealth of Puerto Rico who during the years 1997 to 2007 have paid the compulsory motor vehicle insurance premiums and have also acquired traditional insurance and have not been reimbursed with the compulsory insurance premiums." Docket No. 119, pp. 9–10. The court declines to exercise its discretion to certify the class. Plaintiffs' damages claims have been dismissed. All that remains are Plaintiffs' claims for declaratory and injunctive relief against the Secretary and the Governor in their official capacities. The court concludes that class certification is not appropriate because the injunctive relief approved in this opinion and order will affect all commonwealth motor vehicle owners equally; as a practical matter the injunction granted to the named plaintiffs provides relief to all proposed class members. *See Kan. Health Care Ass'n v. Kan. Dep't of Social & Rehab. Servs.,* 31 F.3d 1536, 1548 (10th Cir.1994); *James v. Ball,* 613 F.2d 180, 186 (9th Cir.1979), *rev'd on other grounds,* 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981); *Carroll v. DeBuono,* 998 F.Supp. 190, 201 (N.D.N.Y.1998). The class action device, therefore, is not the superior method of adjudicating Plaintiffs' claims. Class certification in this case would serve no useful purpose. Consequently, Plaintiffs motion for class certification is **DENIED.**

## V. Conclusion

This Opinion and Order encompasses the court's ruling numerous pending matters. The court summarizes its rulings as follows:

- The Secretary's Motion to Dismiss (Docket No. 98) is **DENIED IN PART** and **GRANTED IN PART.** All claims against the former Secretary in his personal capacity are **DISMISSED.**

- Calderón's Motion to Dismiss is **GRANTED** (Docket No. 108). All claims against the former Governor Calderón are **DISMISSED.**

- Plaintiffs' Motion for Preliminary Injunction (Docket No. 102) is **DENIED IN PART** and **GRANTED IN PART.**[20] Defendants, their agents, or anyone acting in concert with them or pursuant to their orders, and/or their successors in any representative capacity are hereby enjoined from depositing in the General Fund any interest generated by the Duplicate Premiums held in a custodial capacity by the Secretary. The Commonwealth must implement a constitutionally adequate statutory or regulatory scheme to deal with the interest generated by the Duplicate Premiums.

- Plaintiffs' Motion for Class Certification (Docket No. 101) is **DENIED.**

The court shall retain jurisdiction to dissolve its injunction once the Commonwealth implements an adequate scheme pertaining to reimbursement of interest.

**SO ORDERED.**

P.R. Ley 414. Thus, it appears that the Secretary continues to hold in a custodial capacity only $500,000 of the $73 million transferred in 2002.

20. Given that the injunction is based on a purely legal issue, the court will make the injunction permanent, subject, however, to later being vacated. *See Bank One, N.A. v. Guttau,* 190 F.3d 844, 847 (8th Cir.1999) (reviewing preliminary injunction as permanent injunction where only legal issues disputed). The entry of a permanent injunction obviates the need for a preliminary injunction bond.